## THE PHOENIX PAD COMPANY *vs.* THE UNITED STATES OF AMERICA TO THE USE OF THE AMERICAN COAT AND PAD COMPANY.

*Action on Injunction Bond—Measure of Damages—Plaintiff's Violation of the Injunction Not a Defense— Instructions—Proof of Loss Suffered by Issue of Writ.*

In an action on an injunction bond the plaintiff is entitled to recover such damages as he can show were suffered by him as the natural and proximate result of the issuing of the injunction.

The fact that a party did not obey the writ of injunction served upon him does not preclude him, in an action on the injunction bond, from recovering the damages he sustained in consequence of the issue of the writ; provided such damages would not have occurred if the writ had been obeyed.

In an action on an injunction bond the defendant offered a prayer instructing the jury that the plaintiff could only recover the actual damages suffered as the direct consequence of the issuance of the injunction, "the amount of which loss must be proven by clear and definite data sufficient to enable the jury to calculate with certainty the compensation to which the plaintiff is entitled." The trial Court modified this prayer by saying that "the amount of the loss must be proven by data sufficient to enable the jury to calculate with reasonable certainty the compensation to which the plaintiff is entitled."

*Held,* that this modification was proper and worked no injury to the defendant, although the word "data" is somewhat uncertain.

In an action on an injunction bond it is not necessary that the plaintiff should show the amount of loss sustained in consequence of the injunction from records kept at the time the expenditures were made, but the loss may be proved by other competent evidence.

The P. Co. filed a bill alleging that an elastic pad made by the C. Co. was an infringement of a patent owned by the former, and obtained an injunction restraining the C. Co. from making that article. The bond given by the P. Co. was conditioned that it should prosecute the writ with effect and satisfy and save harmless the C. Co. if not prosecuted with effect, and in such case to pay all costs and damages that may be occasioned by the issuing of the injunction. While the injunction was in force, the C. Co. changed the structure of the pad it made, and this new pad cost more to make and had to be sold at the same price as the former thing. The bill of the P. Co. asking for the injunction was finally dismissed, and then the C. Co. brought this action on the bond to recover damages. Its evidence showed the number of pads of the new kind made and sold during the continuance of the injunction and the extra cost incurred in the manufacture thereof. *Held,* that the evidence of the loss suffered by the C. Co. is not indefinite or speculative, but is such as authorizes the jury to find a verdict for that company for the increased cost of manufacture as a loss directly sustained in consequence of the injunction.

*Decided December 3rd, 1909.*

Appeal from the Superior Court of Baltimore City (NILES, J.), where there was a judgment for the plaintiff for $1,819.62½.

*Plaintiff's 1st Prayer.*—That under the pleadings and evidence in this cause, the verdict of the jury must be for the plaintiffs for such damages as they shall find from the evi-

PHŒNIX PAD CO. vs. AM. COAT CO.    551

Md.]                    Statement of the Case.

dence (if. any they do find, resulting from said injunction), resulted directly to the equitable plaintiffs, American Coat Pad Company and Louis Bouchat, from the injunction mentioned in the bond offered in evidence. (*Granted in connection with other instructions.*)

*Plaintiff's 2nd Prayer.*—If the jury find ·from the evidence that Phœnix Pad Company, mentioned in the bond offered in evidence, procured the writ of injunction therein ·mentioned against the equitable plaintiffs, and the bill of complaint was subsequently dismissed for want of further proceedings by the defendants mentioned in said bond, then the said Phœnix Pad Company did not prosecute the writ of injunction with effect or to a successful termination, and their verdict must be for the plaintiffs for at least nominal damages. (*Granted.*)

*Plaintiff's 3rd Prayer.*—If the jury find for the plaintiffs, they may find such damages as they shall find from the evidence that the plaintiffs actually and necessarily or directly sustained by the reason of the issuing or granting and serving of the writ of injunction mentioned in the bond given in evidence, the verdict not to be for a greater sum than three thousand dollars, the penalty of the bond sued upon. (*Granted.*)

*Plaintiff's 4th Prayer.*—If the jury find that the injunction issued by the Phœnix Pad Company against the American Coat Pad Company was not prosecuted with effect, and that in consequence of the issuing of said injunction and while the same was in force, the plaintiffs in this case were compelled in order to supply their customers with the coat pads manufactured by them to go to increased expense in the manufacture of said pads to supply their customers and preserve their trade; and that they manufactured and sold the quantity of coat pads as testified to by them, then the plaintiffs in this case are entitled to be paid by the defendants for the amount of increased cost actually and necessarily incurred by them in said manufacture, and the verdict of the

jury should be for such increased cost. (*Granted in connection with the defendant's 4th, 5th and 6th Prayers.*)

*Defendant's 1st Prayer.*—The defendants pray the Court to instruct the jury that there is no legally sufficient evidence that any save nominal loss or damage was sustained by the plaintiffs in their manufacture and sale of coat pads for garments by reason of the injunction for the issuing of which the bond sued on in this case was issued. (*Refused.*)

*Defendant's 2nd Prayer.*—That the plaintiffs in this case cannot recover as damages resulting from the issuance of the injunction for which the bond sued on in this case was given any estimated loss due to supposed increased cost of manufacture, but only actual damage suffered by the plaintiffs, which was the direct and immediate consequence of the issuance of the injunction, and the amount of which loss must be proven by clear and definite data sufficient to enable the jury to calculate with certainty the compensation to which the plaintiffs are entitled. (*Rejected as offered.*)

That the plaintiffs in this case can recover as damages resulting from the issuance of the injunction for which the bond sued on in this case was given, only actual damages suffered by the plaintiffs, which was the direct and immediate consequence of the issuance of the injunction, except that plaintiffs may recover nominal damage, and the amount of which loss must be proven by data sufficient to enable the jury to calculate with reasonable certainty the compensation to which the plaintiffs are entitled. (*Granted as modified.*)

*Defendant's 3rd Prayer.*—The defendants pray the Court to instruct the jury that the plaintiffs in this case cannot recover as damages resulting from the issuance of the injunction for which the bond sued on in this case was given any estimated loss due to supposed increased cost of manufacture, but only the actual damage suffered by it, which actual damage must be proven by positive evidence establishing actual money loss, which must be determined from records of expense kept at the time the expenditures were made.

except that the plaintiffs may recover nominal damages. (*Rejected.*)

*Defendant's 4th Prayer.*—That the plaintiffs cannot recover any save nominal damage in this case unless he shall show that he has been actually and directly damaged by the issuance of the injunction for which the bond in this case was given, and this fact he must establish by a preponderance or greater weight of the evidence. If he fails to meet this burden which the law lays upon him, your verdict must be for the defendants. (*Granted.*)

*Defendant's 5th Prayer.*—That if the jury shall find from the evidence that the plaintiffs, after having been enjoined from making the so-called fibre pad, continued to make the same pad with an interposed layer of wadding in place of fibre, that it cannot recover any save nominal damages in this case unless it shows by a preponderance of the evidence that the cost of making the cotton pad with wadding insertion was greater than the cost of making the fibre pad and the difference must be fixed by direct and positive evidence, and in making this calculation the jury must take into consideration not only the cost of making and inserting the pieces of wadding, but also the saving of fibre, cotton and labor employed in making the fibre pad if they shall find such saving. (*Granted.*)

*Defendant's 6th Prayer.*—That if the jury shall find from the evidence that the plaintiffs for a period from June 11, 1901, to March 3, 1902, were compelled by the issuance of the injunction complained of in this case to desist from the manufacture of their own patented pad, called the fibre pad, and to substitute in place thereof with their customers a pad containing several layers of wadding in place of a fibre cushion, and that they did so substitute and did continue their business and supply their customers, that they are not entitled to recover any save nominal damages, in this case unless they can show by a preponderance of the evidence that the cost of manufacturing the cotton pad containing wad-

ding was greater than the cost of making the fibre pad. (*Granted as modified.*)

The cause was argued before BOYD, C. J., PEARCE, SCHMUCKER and BURKE, JJ.

*Arthur Steuart,* for the appellants.

*D. G. McIntosh* and *James F. Thrift,* for the appellee.

BURKE, J., delivered the opinion of the Court.

On May the 8th, 1901, the Phœnix Pad Company of Baltimore City filed a bill of complaint against the American Coat Pad Company and Louis Bouchat in the Circuit Court of the United States for the District of Maryland for an injunction to restrain them from infringing .certain letters patent for a new and useful invention entitled a shoulder pad, issued by the United States and owned by the complainant.    The Court ordered a preliminary injunction to issue as prayed upon the filing by the complainants of a bond with surety in the penalty of three thousand dollars.    The complainant executed and filed a bond in the prescribed penalty on the 12th day of June, 1901, with the United States Fidelity and Guaranty Company as surety.    This bond was approved by the Court and the injunction was issued, wherein it was adjudged that the defendants had infringed the rights secured to the complainants by the patent mentioned in the bill, and' restrained them, their servants and employees, etc., from making, using or furnishing. for use or selling any shoulder pads whatever containing or embodying the invention and improvements, or any material or substantial part thereof set forth and claimed in and by the letters patent named in the bill of complaint.    Upon the appeal of the defendants, the United States Circuit Court of Appeals reversed this order.    Nothing further was done by the complainants in the cause, and the District Court on the 16th of

December, 1907, dismissed the bill of complaint with costs
to the defendants.

The defendants then brought an action for damages on the
injunction bond in the Superior Court of Baltimore City,
and from the judgment in their favor entered in that Court
the defendants in that suit have brought this appeal.

The record contains only one bill of exception, which pre-
sents for review the propriety of the Court's ruling upon
the prayers of the respective parties offered at the close of
the whole evidence.  The plaintiffs offered four prayers, and
the defendants six for instructions to the jury.  The Court
granted the plaintiff's prayers, and also granted the fourth,
fifth and sixth prayers of the defendants; but modified, and
granted as modified, their second prayer, and refused their
first and third prayers, and to these rulings the defendants ex-
cepted.  These prayers will be set out in the report of the
case preceding this opinion.

It was conceded by the defendants that the plaintiffs were
entitled to recover nominal damages, but they contend that
under the facts appearing in the record it was the duty of the
Court to have limited the recovery to such damages.  They
further contend that, even if they be wrong in this position,
the Court committed an error in refusing their third prayer
which asserted that actual damages could only "be deter-
mined from records of expense kept at the time the expendi-
tures were made."  Inasmuch as there was no record of such
expense, the granting of this prayer would have precluded the
recovery of actual damages.

Assuming that the plaintiffs, under the facts of the case,
were entitled to recover actual damages, and that there was
evidence offered from which the amount of such damages
might have been legitimately found by the jury, we are of
opinion that the case was fairly submitted to them under the
prayers granted.

The general rule is that in an action upon an injunction
bond the recovery must be confined to such actual damages
as the plaintiff may be able to show were suffered by him.

This damage must be the natural and proximate consequence of the issuing of the injunction. This rule, or measure of damages, is so well settled that no authorities need be cited to support it. It was the rule applied by the Court in all its instructions upon the subject, and, unless there be reversible error in refusing the defendant's first and third prayers and in modifying their second prayer, the judgment must be affirmed.

To determine the propriety of the Court's action in these respects, a brief outline of the facts is necessary. After the service of the injunction upon the plaintiffs, by advice of their counsel, they changed the character or structure of the pad. Prior to the injunction they were making an elastic pad, made of cotton with a layer of elastic fibre. The insertion of this fibre in the mass of cotton prevented the pad from matting, and held it in its original shape. This was the pad which the Phœnix Pad Company claimed to be an infringement of its patent. The change made in the structure was the insertion of an additional layer of four pieces of wadding. The shape and structure of these layers and the manner in which they were introduced into the original pad are fully explained in the testimony of the witnesses.

To retain their customers it was necessary to sell this changed pad at the same price as the original pad. The evidence on the part of the plaintiffs tended to show that the pad made and sold by them after the injunction cost more to manufacture than did the elastic pad which they were putting out before the injunction was issued. This increased cost in the manufacture of the pad pending the injunction, together with certain costs incurred by them in the injunction case, is the damage which the plaintiffs sought to recover in this action.

The plaintiffs proved the number of pads made and sold during the continuance of the injunction. They produced their books, and introduced in evidence, without objection, a statement taken from the books, which showed the additional cost incurred in the manufacture of the new pad. Miss

Rodgers, the book-keeper of the plaintiff company, who pro-
duced this statement and who proved it was taken from those
books, testified that she did not know what the extra cost for
manufacturing the pads was; but that that cost, as shown
upon the statement, was figured by Mr. Bouchat, and that,
to quote her language, it "was understood by me to put that
additional cost on them." She further testified that there
was a careful calculation made of the cost of manufacturing
the pads made upon estimate sheets, which were preserved for
a while; but that these estimates were not entered on the
books, and that she had then none of those sheets; that Mr.
Bouchat attended to the calculation of the cost, and that the
estimate sheets, which were preserved for about six months,
showed the cost of the pad—the material that went in it and
the labor.

Mr. Bouchat, who had large experience in the manufacture
of pads and who was familiar with every detail of the busi-
ness, testified that the extra cost of the substituted pad was
two dollars and fifty cents per thousand pairs, and fully ex-
plained how and why this extra cost was made necessary. He
had the books of the company before him, which showed the
number of pads made. These books and the statement above
mentioned were afterward offered in evidence during the ex-
amination of Miss Rodgers. He stated that this additional
cost was made up of additional material and labor required
to make the pad manufactured by them after the injunc-
tion—two dollars for additional material and fifty cents for
labor, etc., in putting them together.

Mr. Schleunes, the secretary-treasurer of the company,
who was familiar with the manufacturing department, fixed
the increased cost at two dollars and forty-five cents per thou-
sand pair, and explained in detail how this estimate of cost
was arrived at. There was some discrepancy between this
witness and Mr. Bouchat as to the cost of the pad made by
the plaintiffs before the injunction was issued, but that was
a matter for the jury to deal with. The plaintiffs offered
evidence tending to show that after the service of the injunc-

tion they had either to discontinue business, or manufacture at an additional cost, and that they were advised that they might make the substituted pad without violating the injunction. These are all the facts that need be stated in order to dispose of the legal questions raised on the record.

The real question in the case arises under the defendant's first prayer, which asserted that there was no legally sufficient evidence that any, save nominal loss or damage, was sustained by the plaintiffs by reason of the injunction. It was argued in support of this prayer that nominal damages only could be recovered, first, because the plaintiffs had violated the injunction; secondly, that the evidence of actual loss is too vague, indefinite and conjectural to be considered by the jury in computing that loss. We have been referred to no case which supports the defendant's first proposition, and we see no good reason why such should be the law. There is no such condition to be found in the injunction bond. The condition of that obligation is that the complainant in the injunction suit shall prosecute the writ with effect, and satisfy and save harmless the defendant if the same shall not have been prosecuted with effect; *and in such case shall pay all costs and damages that may be occasioned by the issuing of the injunction.* The right to recover such damages as may be occasioned by a breach of the obligation of the bond is not conditioned upon the defendant's obedience to the writ, and when suit is brought upon the bond no such condition can be read into it as a defence.

When the defendant in the injunction suit has obeyed the writ, as is his duty to do, and has suffered loss in consequence thereof, he may recover that loss. Where he has violated the injunction and no actual loss has resulted of course no such damages can be recovered. This was the case of *Steel* v. *Gordon,* 14 Wash. 523, cited by the appellant. But where the plaintiff has violated the injunction and has suffered loss, this conduct would only operate to prevent damages occurring which would have resulted if the writ had been obeyed.

It is stated in 16 *Amer. Eng. Ency. of Law,* 458, that, "it may be laid down as a general rule that while by disobedience to a writ of injunction the party enjoined becomes amenable to the action of the Court as for contempt, such disobedience does not deprive him of his right of action for a breach of the conditions of the injunction bond, and is no defense to such an action."

It was decided in *Van Hoover* v. *Van Hoover,* 18 Mo. Appeals, 25, that: "Obedience to the writ is not a condition to a recovery on the bond. If the writ has not been respected and obeyed, it is for the Court upon a proceeding in contempt, and not a defense on the bond. *High on Injunction,* sec. 1654; *Colcord* v. *Sylvester,* 66 Ill. 540. Doing things which the writ commands not to be done may prevent damages accruing which would have resulted if the writ had been *obeyed,* and a party enjoined of course would be unable to show damages in *that respect,* as a consequence of the injunction."

In *Colcord* v. *Sylsvester, supra,* the contention was broadly made that no action could be maintained in case the writ of injunction had been disregarded by the party on whom it was served. But the Court said: "We fail to perceive the soundness of this proposition. The condition of the bond is one thing, the service of the writ another and entirely different thing. By the service of the writ the party against whom it is directed is under the mandate of the Court, which he must regard at his peril. We have not found a case where his disobedience has deprived him of his right of action on the bond."

Nor can we agree to the second proposition asserted by the appellants, viz, that the evidence offered to show actual damage was so indefinite and speculative as to have justified the Court in withdrawing the consideration of such loss from the jury.

The evidence upon this subject went in without objection, and, assuming it to be true, as we must do in passing upon this prayer, we think it was such that the jury might, with reasonable certainty, have determined the amount of loss.

The evidence upon this point, some of which we have adverted to, cannot, we think, be fairly characterized as speculations, guesses and unwarranted estimates; but contains facts as to increased cost of manufacturing, etc., sufficient to have enabled the jury to estimate the loss. We have carefully examined the evidence, and think it was sufficient, if believed by the jury, to have warranted a recovery of actual loss under the principles announced in *Central Coal and Coke Company* v. *Hartman,* 111 Fed. Rep. 96; *San Jose Fruit Packing Co.* v. *Cutting,* 133 Cal. 237, and others relied on by the appellants.

The appellants have no good reason to complain of the modification of their second prayer. The only real change made in the prayer as offered was the elimination therefrom of the words "clear and definite" and the insertion of the word "reasonable." The word "data," which is somewhat uncertain and equivocal, appears in both prayers. Instead of this word it would have been better to have used the words "evidence" or "facts"; but we do not consider that the defendants were in any manner injured by the modification made.

The defendant's third prayer was properly refused. The law does not require, as a condition of recovery of actual loss, that such loss should be "determined from records of expense kept at the time the expenditures were made," as the prayer asserted. Such records may have greater probative force, but they are not necessary to a recovery, which may be had upon proof of facts from which the damage suffered may be logically deduced.

It follows that the judgment must be affirmed.

*Judgment affirmed with costs.*