THE AMERICAN BONDING COMPANY OF BALTI-
MORE *vs.* STATE, Use of the Commercial and
Farmers' National Bank of Baltimore.

*Mortgages: foreclosure; injunction to restrain; liability of
surety for amount found due by the mortgagor;
interest and costs. Decree of Court of
competent jurisdiction: no
collateral attach for
mere irregu-
larities.*

On a bill for an accounting a Court of Equity has power to
decree the payment of the amount found to be due from the
plaintiff to the defendant.                                p. 312

Where a Court has jurisdiction to pass a decree, the decree
can not be impeached in a collateral proceeding on the ground
of any mere irregularity.                                p. 313

In a suit under an injunction bond where the injunction was
not prosecuted with effect, mere questions of irregularity
in the decree of the Court dissolving the injunction can not
be raised.                                                p. 313

Independent of any statutory provisions, when an injunction is
applied. for, a Court of Equity in issuing the writ, may grant

it upon a bond being given with such terms and conditions as it may deem proper.                                    p. 316

On a bill to enjoin the foreclosure of a mortgage and for an accounting, where the Court has jurisdiction to decree the payment of a sum found to be due from the plaintiff to the defendant, and the condition of the bond requires the plaintiff to perform such decree as the Court shall pass in the premises, the surety is liable for the amount named in the decree which the plaintiff is ordered to pay.          p. 317

Section 18 of Article 66 of the Code refers only to sales and proceedings under the power of sale contained in the mortgage referred to in the article, and has no application to injunctions issued to restrain proceedings to foreclose other mortgages.                                    p. 317

No statute authorizes a Court of Equity to determine the damages sustained by a defendant in a bill for an injunction, by reason of the issuing of the writ, unless such power is conferred by section 81 of Article 16 (relating to application of executors or administrators to stay proceedings at law), and section 18 of Article 66 of the Code of 1912 (relating to the stay of foreclosure proceedings under a contract to a decree).
                                    p. 316

On a petition by a mortgagor for an injunction to stay the foreclosure of the mortgage and for an accounting, etc., the Court has jurisdiction in dissolving the injunction to order the mortgagor to pay the balance found due, with interest and costs (and such a decree is not a decree for damages).
                                    p. 317

In such a case when the bond given in the injunction suit was conditioned upon the injunction being prosecuted with effect, and upon the further condition that the plaintiff (the mortgagor) should perform such decree as the Court might pass in the premises, if the injunction is not prosecuted with effect, the surety on the bond is liable for the amount that the plaintiff is ordered by the decree to pay.          p. 317

*Decided April 9th, 1913.*

Appeal from the Court of Common Pleas of Baltimore City (DUFFY, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Edward Duffy,* for the appellant.

*Charles W. Field* (with whom was *Henry H. Hubner* on the brief), for the appellee.

THOMAS, J., delivered the opinion of the Court.

On the first of April, 1911, Harriet M. Beckwith filed a bill of complaint in the Circuit Court No. 2 of Baltimore City against The Commercial and Farmers' National Bank of Baltimore alleging under oath that she borrowed from said bank in 1905 several sums of money amounting to $35,000.00, and executed a mortgage of her property in Baltimore County and in the States of New York and South Carolina to secure the payment of said loan; that subsequently, at the request of the bank, she insured her life, "in the sum of fifty thousand dollars," and had the policy so drawn as to inure to the benefit of the bank as additional security, and that she also, at the request of the bank, placed in its possession "a quantity of valuable jewels" as further security for said loan; that the bank had charged her "excessive and usurious interest" on the amount so borrowed, had failed to give her proper credit for the amounts paid by her; and had refused to render her "a full, detailed and itemized account" of all her transactions with it. The bill then alleged: "And your oratrix charges that upon a true and proper accounting with the defendant it will be shown that she has fully paid, if not overpaid, any amount justly due by her on account of her indebtedness to the bank, and that she is entitled to have the said mortgage last given to the said

C. W. Field, hereinbefore recited, as collateral to the said bank, released, and also to have releases of the mortgages given as collateral for the debt of your oratrix on property situate in the States of New York and South Carolina remaining unsold, and to have the jewelry held by the said bank, returned to her, nevertheless, the said defendant claiming that there is a considerable indebtedness still due by your oratrix, retains said jewelry which has not been redeemed by your oratrix, and threatens to institute proceedings against the several properties covered by the mortgages hereinbefore recited and given as collateral for the security of said debts." The prayer of the bill was as follows: "Wherefore, your oratrix prays that the said defendant be compelled to produce its said books so far as the accounts of your oratrix and of the said Walter M. Mason and Harry M. Mason appear, and that the same may be examined by someone competent to do so, and authorized by this Court, and that an accounting be had between your oratrix and defendant respecting and concerning all the transactions had between them, and of all renewals of notes, and whether the same were paid by other notes or part cash, and also that the said accounting shall embrace the amounts paid by your oratrix to other banks than the defendant on account of notes or renewals given by her as a part of the original indebtedness due to the defendant, and also of all payments made by her of whatever sort, both on account of real estate sold by her, the proceeds of which have been paid over to defendant, and also including the proceeds of any jewelry sold by defendant, and any moneys paid by your oratrix to defendant on account thereof, and that in the meantime an injunction may issue out of this Honorable Court prohibiting and restraining the defendant from proceeding to enforce either or any of the mortgages hereinbefore referred to, until the state of accounts shall have been ascertained between your oratrix and defendant, and for other and further relief. may it please your Honor to grant your oratrix your writ of subpœna to be directed to

the said Commercial and Farmers' National Bank of Baltimore, residing in said City of Baltimore, requiring it to appear in this Court on a day to be named to answer the premises, and to abide by such order and decree as may be passed therein."

The Court passed an order requiring the bank to show cause why the relief prayed should not be granted, and thereupon the bank filed its answer, admitting the execution of said mortgages to secure the loan of $35,000.00, but denying that all the loans secured by said mortgages and the pledge of said jewelry had been paid. It further alleged that it had not charged Mrs. Beckwith more than the legal rate of interest; that she was indebted to the bank to the amount of $7,413.34, with interest from March 21, 1911; that the writ of injunction should not be granted, and that the defendant was entitled to the protection of "said mortgages and collateral, for the payment of the above amount." A general replication was filed, and the plaintiff obtained leave to take testimony. On the 28th of June, 1911, the plaintiff filed a petition alleging under oath, among other things, that she had received notice from the bank that it would proceed to foreclose the mortgage of her property in Baltimore county, and praying "that an injunction shall issue upon her giving bond in the sum of fifteen thousand dollars ($15,000.00) which is double the amount claimed by said bank to be due to it on account of said indebtedness, and that the defendant be enjoined and restrained from prosecuting its threat of foreclosure." The Court thereupon passed an order granting the injunction, upon the filing of a bond by the plaintiff in the penalty of $15,000.00, with security to be approved by the clerk. The plaintiff filed her bond, and an injunction was issued restraining the bank from proceeding to "enforce either or any of the mortgages, referred to in the bill of complaint, filed in this cause, until the state of accounts shall have been ascertained between" the plaintiff and the bank. Thereafter the bank filed its cross-bill in

said Court alleging that Harriet M. Beckwith was indebted to the bank in said sum of $7,413.34, and praying the Court to pass a decree for the payment thereof, and the interest thereon, and that the writ of injunction previously issued be dissolved.    In her answer to the cross-bill, Mrs. Beckwith relied upon the matters averred in her original bill, and later filed a petition asking leave to amend her bill of complaint, with the assent of the American Bonding Company, surety upon said injunction bond, to the amendment.    The amended bill was filed by Mrs. Beckwith, the bank answered, a general replication was filed, testimony was taken in open Court, and on the third day of April, 1912, the Court passed a decree dissolving the injunction, dismissing Mrs. Beckwith's bill of complaint and requiring her to pay to the bank, within thirty days from the date of said decree, the sum of $7,413.34, with interest from March 21, 1911, and requiring her also to pay the costs of said suit.

After the passage of said decree this suit was brought on the injunction bond, in the Court of Common Pleas, by the bank against the American Bonding Company, as surety on said bond.    The declaration, after setting out the proceedings in the equity case to which we have referred, and the injunction bond, and alleging that no part of the said sum of $7,413.34 and the interest thereon had been paid, then alleges that Mrs. Beckwith, the complainant in said equity case: (1) "did not prosecute the said writ of injunction with effect; (2) that she "did not satisfy and save harmless" said bank; (3) "that she did not pay all costs and damages occasioned by the issuing" of said writ, and, (4) that she "did not in all things obey, abide by, perform and fulfill such decree and order, as was made and passed by the Court in the premises."    The only plea filed by the defendant avers "that Harriet M. Beckwith did prosecute the said writ of injunction in said bond mentioned, with effect."    The plaintiff joined issue on said plea, and during the trial offered in evidence the bond, and the decree of the Circuit Court No.

2 of Baltimore City, and then proved that Mrs. Beckwith resided in Baltimore county; that no part of the sum mentioned in said decree, or the interest thereon, had been paid, and that the defendant's costs in said equity case, consisting of clerk's costs, sheriff's fees, the defendant's appearance fee and stenographer's costs, amounting to $103.55, had not been paid to the bank. The case was tried before the Court, without a jury, and at the conclusion of the testimony the Court, at the instance of the plaintiff, granted the following instruction: "The plaintiff prays the Court to find as matter of law that if the Court finds as matter of fact that the Circuit Court No. 2 of Baltimore City passed the decree in the cause of *Harriet M. Beckwith* v. *Commercial and Farmers' National Bank of Baltimore,* offered in evidence in this cause, then under the peladings and evidence in this cause the plaintiff is entitled to recover of the defendant such sum or sums of money as were required by said decree to be paid by said Beckwith to said bank, to wit, the sum of seven thousand four hundred and thirteen dollars and thirty-four cents ($7,413.34), with interest thereon from March 21st, 1911, till paid, and such sums of money, if any, as were properly paid out and expended by said bank in the payment of its costs of suit in said case of said *Beckwith* v. *said Bank* in said Circuit Court No. 2 of Baltimore City." The defendant's prayers, which were rejected by the Court, are as follows:

*First*—"The defendant prays the Court to instruct itself, sitting as a jury, that under the pleadings and evidence in this case the plaintiff is not entitled to recover the sum of seven thousand four hundred and thirteen dollars and thirty-four cents ($7,413.34), the same being the amount due under the mortgage."

*Second*—"The defendant prays the Court to instruct itself, sitting as a jury, that under the pleadings and evidence in this case the plaintiff is not entitled to recover the sum of three dollars and ninety cents ($3.90) sheriff's fees, or

the sum of seventy-five dollars and forty cents ($75.40) sten-
ographer's fees, or the sum of fourteen dollars and twenty-
five cents ($14.25) clerk's fees paid by the plaintiff."

The defendant excepted to the granting of the plaintiff's
prayer and to the rejection of its prayers, and this appeal
is from a judgment in favor of the plaintiff for the penalty
of said bond, to "be released on payment of $8,271.42,—with
interest from date, and cost of suit."

It is not claimed by counsel for the appellant in his brief,
nor was it claimed in the oral argument in this Court, that
the costs referred to *are not proper items of costs,* and the
only contentions made by the learned counsel are: first, that
the bond is not liable for the amount ascertained by the
Circuit Court No. 2 of Baltimore City to be due the bank
and which its decree required Mrs. Beckwith to pay, and
second, that said decree, to that extent, was not "made in
the premises."

*First*—Taking up the second of these contentions first, it
is only necessary to refer to the allegations and prayer of the
bill of complaint filed by Mrs. Beckwith, which we have
already briefly stated, to show that it was a bill for an
accounting, etc.  *Union Pass. R. Co.* v. *Baltimore,* 71 Md.
238.  Under such a bill there can be no doubt of the power
of a Court of Equity to decree the payment of the amount
found to be due from the plaintiff to the defendant.  *Miller's
Equity Procedure,* 824; *Hall* v. *McPherson,* 3 Bland, 529;
*Grove* v. *Fresh,* 9 G. & J. 280; *Horner* v. *Nitsch,* 103 Md.
498; *Goldthwait* v. *Day,* 149 Mass. 186; 21 N. E. 359.
In *Grove* v. *Fresh, supra,* the Court said: "In a bill for an
account, filed by one partner against his co-partners after
the termination of the partnership, all the partners, as well
defendants as complainant, are regarded as actors, and the
accounts must be stated by the auditor, and the concerns of
the partnership and rights of the several partners finally
adjudicated by the chancellor in the same manner as if each
partner was a complainant, filing a bill against his co-part-

ners." And in the case of *Goldthwait* v. *Day, supra,* the Court said: "When a bill is brought upon such an account it implies that there are items on both sides, and that the balance is uncertain until ascertained by the aid of the Court. It seeks to have the balance ascertained and paid, and as a condition of being entertained it imports an offer, which formerly it was required to express, on the part of the plaintiff, to pay the balance if it should turn out against him. * * * Under such a bill, the defendant has nothing to plead in order to get the advantage of it. His claim is not an independent one, but is admitted and asserted by the plaintiff, provided the items on his side exceed those on the plaintiff's side." It is said in *Wyatt* v. *Sweet,* 48 Mich. 541: "It seems to have been thought by the circuit judge that a cross-bill was necessary to enable the Court to order payment by complainant. In this, the Court labored under misapprehension. The case itself was a case of cross-claims. The object of it was for each side to bring forward his demands and have them judicially liquidated and those on one side applied to compensate those on the other until a final balance should be obtained as due from defendant to complainant, or from complainant to defendant, no matter which, and for the Court after ascertaining the true balance to proceed and close the controversy and do complete justice by ordering payment."

It is urged by the appellant that the "proceeding was not treated by the parties or the Court as one for an accounting," because there was no interlocutory "decree to account". The question, however, in this connection, is not one of procedure, but of jurisdiction. If the Court had jurisdiction to pass the decree in question, the decree can not, in a suit on the injunction bond, be impeached on the ground of any irregularity in the proceedings. In the case of *Lloyd* v. *Burgess,* 4 Gill, 188, where the suit was an injunction bond, the Court said: "This Court must consider the order of the Chancery Court as regularly and legally passed in the cause.

'The judgment of a Court of competent jurisdiction, when coming incidentally in question in any other Court, is conclusive upon the question decided, and can not be impeached, on the ground of informality in the proceedings, or error or mistake of the Court in the matter on which they have adjudicated.' "

In the case of *Barrack* v. *Horner,* 78 Md. 253, it was said by JUDGE PAGE in reference to an erroneous decree from which no appeal had been taken: "The allegations contained in the bill determine the jurisdiction of the Court. 'The true test of jurisdiction will in all cases be found in the determination of the question, whether a demurrer will lie to the bill. If this be so, neither the erroneous action of the Court after the filing of the bill (showing a case for the exercise of jurisdiction), nor defective proofs could affect the question of jurisdiction.' " As the Circuit Court No. 2 of Baltimore City had jurisdiction under the bill filed by Mrs. Beckwith regardless of the bank's cross-bill, to pass the decree requiring her to pay the amount found to be due the bank, it can not be said that the decree was not "made in the premises."

*Second*—The bond upon which this suit was brought, after reciting that by an order of the Circuit Court No. 2 of Baltimore City, passed in a cause wherein Harriet M. Beckwith was complainant and the Commercial and Farmers' National Bank of Baltimore was the defendant, an injunction was about to issue as prayed in the bill filed in said cause, states the conditions of the bond as follows: *"The Condition of This Obligation is Such,* That if the said complainant shall and do prosecute the said writ of injunction with effect, and satisfy and save harmless the said defendant if the same be not prosecuted with effect, and in such cases pay all costs and damages that may be occasioned by the issuing thereof, and shall in all things obey, abide by, perform and fulfill such decree and order as shall be made in the premises, then the above obligations to be void, otherwise

of full force and virtue." By the terms of the bond, in the
event of Mrs. Beckwith's failure to prosecute the writ of
injunction with effect, she was not only required to pay all
costs and damages caused by the issuing of said writ, but
to obey, abide by, perform and fulfill such decree or order
as should be made in the premises.

It is said in *Alexander's Ch. Prac.*, 81-82, that except in
cases where a bill was filed by a defendant in an action at
law to enjoin proceedings on a judgment against him, or by
an executor or administrator to stay proceedings at law, it
had been the practice to grant injunctions without requiring
a bond, but that that practice was likely to be disturbed by
the Act of 1835, Chapter 346, which gave the Court power
in all cases to require a bond, with such conditions as the
Court should determine. It is there stated, however, that as
an application for an injunction is addressed to the sound
discretion of the Court, and may be granted upon such con-
dition as the Court may prescribe, said Act may be regarded
as "a legislative exposition of the previously existing powers
of the Court." In *Miller's Equity Procedure,* section 587,
it is said: "Whether or not in a given case a bond should be
required is a matter resting in the discretion of the Court;
that the Act of 1835 was regarded as declaratory of the
existing law, and that even in an action to stay execution on
a judgment at law, the requirement of a bond is left to the
discretion of the Court." And in 2 *High on Injunction* (2nd
Ed.), section 1620, the author says: "In the absence of any
statute prescribing the conditions of the bond, it rests in the
discretion of the Court to fix the terms upon which the relief
may be granted." In the case of *Wagner* v. *Shank,* 59 Md.
315, JUDGE MILLER said that while there was no statute
requiring a bond to be given before an injunction is issued
to stay the execution of a judgment, and the matter is left
to the discretion of the Court, the practice universally pre-
vailed to require such bonds, except "in extreme and excep-
tional cases, and generally in double the amount of the judg-

ment sought to be restrained, as was once provided by the old Act of 1723, Chapter 8, section 5." So that, independent of any statutory provision, it was within the power of the Circuit Court No. 2 of Baltimore City to grant the injunction applied-for by Mrs. Beckwith with such terms as to the conditions of the bond required as it deemed proper. This we understand to be conceded by counsel for the appellant, but he insists that the *decree* referred to in the bond is a decree for *damages.* There is no statute, however, in this State authorizing a Court of Equity to determine the damages sustained by the defendant in a bill for an injunction by reason of the issuing of the writ, unless such power is conferred by section 81 of Article 16, and section 18 of Article 66 of the Code of 1912, in the cases therein referred to, and even if we were to assume that a Court of Equity in this State has such authority, it has never been the practice to do so. In 1 *Spelling on Injunctions, etc.,* section 960, it is said: "In the absence of a statute an injunction bond can only be enforced by action, whether executed with or without sureties." And in 2 *High on Injunctions,* section 1657, it is said: "The practice and modes of procedure to which resort is had for ascertaining and assessing damages upon injunction bonds, after a dissolution, vary largely in the different states, being generally regulated by express legislation, or by local rules of practice. In some of the states, as will be hereafter shown, an expeditious and summary method of procedure has been provided by legislation for determining the damages upon motion or suggestion in the injunction suit, and without the necessity of resorting to an original and independent action upon the bond. There has been much conflict of authority whether, in the absence of express legislation a Court of general equity powers might, upon dissolving an injunction, ascertain by reference, or otherwise, the amount of damages sustained by the injunction and decree payment of such amount without a new suit for that purpose. But, while courts of much respectability have insisted

upon the exercise of such a jurisdiction, treating it as a cumulative remedy, entirely independent of and distinct from any action which might be brought upon the bond, the undoubted weight both of authority and principle is against the exercise of such a jurisdiction.   It is certain that no warrant can be found for its exercise in the former practice of the English High Court of Chancery, and however desirable and convenient such procedure may be and undoubtedly is in practice, the doctrine is too firmly fixed to admit of controversy, that in the absence of positive legislation a Court of equity has no power to afford a remedy upon the bond in the injunction suit, such a power being neither an incident to the general powers of courts of equity, nor consistent with the principles of equity jurisdiction.   In the absence, therefore, of legislative authority to the contrary, a Court of Equity will not, upon dissolving an injunction, enforce payment of damages in the original cause, but will remit the parties aggrieved to their action upon the bond."   The decree referred to in the bond was not a decree for damages, but such a decree as the Court had jurisdiction to pass under the bill filed by Mrs. Beckwith.   It is true, as said by JUDGE · BURKE *in Phoenix Pad Co.* v. *Am. Coat Co.,* 111 Md. 549: "The general rule is that in an action upon an injunction bond the recovery must be confined to such actual damages as the plaintiff may be able to show were suffered by him.  This damage must be the natural and proximate consequence of the issuing of the injunction."   But where, as in this case, a Court of Equity has jurisdiction to decree the payment of a sum found to be due from the plaintiff to the defendant, and the conditions of the bond require the plaintiff to perform such decree as the Court shall pass in the premises, there can be no doubt of the liability of the surety for the amount of said decree.

Section 18 of Article 66 refers only to sales and proceedings under the power of sale contained in the mortgages referred to in that article, and has no application to injunc-

tions issued to restrain proceedings to foreclose other mortgages. The mortgages referred to in the equity case in which said bond was given, were not offered in evidence in this case and are not found in the record, and we must therefore dispose of the case without any reference to the provisions of section 18. We have no doubt, for the reasons we have stated, that the Circuit Court No. 2 of Baltimore City had jurisdiction upon the bill filed by Mrs. Beckwith to pass the decree relied on in this case, and that the appellee was entitled to recover the amount of said decree on the bond sued on.

No objection has been urged by the appellant to the form of the plaintiff's prayer. The only costs mentioned in the evidence are those to which we have referred, and as it is not claimed by the appellant that they were not proper items of cost, the appellant was not prejudiced by the failure of the prayer to specify more particularly the costs the plaintiff was entitled to recover.

It follows from what we have said that the defendant's prayers were properly rejected, and as there was no reversible error in the ruling of the Court below, the judgment must be affirmed.

*Judgment affirmed, with costs.*