637 A.2d 517

Ray Anderson FISCHER

v.

Darrell L. LONGEST, et al.

No. 747, Sept. Term, 1993.

Court of Special Appeals of Maryland.

Feb. 25, 1994.

Christopher G. Hoge (Crowley, Hoge & Fein, P.C., on the brief), Washington, DC for appellant.

James C. Savage, Rockville, for appellees.

Argued before WILNER, C.J., and MOYLAN and DAVIS, JJ.

WILNER, Chief Judge.

Appellant filed a five-count complaint in the Circuit Court for Baltimore City, charging appellees, his former attorneys, with malpractice, fraud, conversion, and conspiracy, and seeking both substantial damages and an accounting. In November, 1991, the court dismissed the four tort actions for failure to state a claim upon which relief could be granted and referred the claim for accounting to an auditor. Eventually, the auditor held a hearing and, in a report filed in July, 1992, concluded that appellant still owed appellees nearly $22,000 in attorneys' fees. Appellant excepted to the report. After a hearing held March 11, 1993, the court overruled the exceptions and ratified the report. This appeal is from the November, 1991 dismissal of the tort claims and the subsequent ratification of the auditor's account.[1]

---

1. The procedural history of this case has not been smooth. Appellant filed an appeal in 1991 from the dismissal of the tort claims, notwithstanding that the judge specifically refused to enter judgment on those claims pursuant to Md.Rule 2–602(b). That appeal was dismissed for lack of a final judgment. Following the hearing on the exceptions to the auditor's report, the court directed that a written order be submitted in conformance with its oral comments. Appellant filed this appeal on March 30, 1993, before that order was signed. As the order eventually was signed and filed on April 1, however, we shall regard the appeal as having been noted on April 1, immediately after the filing of the order. See Md.Rule 8–602(d).

### Underlying Alleged Facts

In May, 1987, appellant was arrested for driving under the influence of alcohol and possession of a handgun. Because he had previously been convicted of a felony (manslaughter) in California, Federal charges were brought against him for possessing a firearm after conviction of a felony. Following a search of his home, he was charged as well with certain drug offenses and a number of other weapons offenses. Somewhere between August 7 and 11, appellant engaged appellees to represent him on the Federal charges and also, according to his complaint, to represent his interests in maintaining certain real and personal property. The parties agreed to a fixed fee of $50,000 plus an additional $10,000 for expenses. Appellant paid them $3,000 in cash and executed a $60,000 note secured by deeds of trust on appellant's two properties.

Appellee Longest entered his appearance for appellant on August 11, 1987; appellees Schanno and Gavin entered their appearances a month later, on September 9. On October 6, having waived a preliminary hearing, they filed various motions in the District Court, including a motion to suppress evidence, a motion for leave to file a plea of not guilty by reason of insanity, and motions regarding appellant's competence to assist counsel and stand trial. All during this time, appellant was in pre-trial detention. Apparently dissatisfied with appellees' efforts, appellant engaged new counsel in December, 1987. In February, 1988, appellees withdrew their appearance and appellant proceeded solely with his new counsel.

In June, 1988, appellant was released from detention on $150,000 secured bond. Through his new counsel, he then proceeded to negotiate a plea agreement with the Government, pursuant to which he pled guilty to possession with intent to distribute marijuana and possession of a firearm by a convicted felon and agreed to forfeit certain property. He was sentenced to concurrent terms of five years on each offense, those sentences then being suspended in favor of parole and probation.

*Nature of the Complaint*

In Count I of his complaint, appellant charged appellees with malpractice—failing to exercise such reasonable and ordinary skill, care, and diligence as would be reasonably necessary to fulfill the objectives of their employment. He enumerated ten kinds of failings: (1) failure to take any measures to seek his release on bond, (2) failure to investigate the charges against him, (3) disclosure of confidential information to the Government, (4) failure to "adequately protect [appellant's] rights," including the failure to file "appropriate" motions and to properly research and draft the motions they did file, (5) failure to obtain information concerning the expungement of appellant's prior conviction in California, (6) failure to discuss with him his right to a preliminary hearing and the recommendation that he waive such a hearing, (7) failure to communicate with him, explain his options, and assess his chance of conviction, (8) failure to obtain his consent to the entry of a plea of insanity, (9) failure to preserve and protect his real and personal property, and (10) failure to provide an accounting of the time spent on his case. Nowhere in Count I, or elsewhere in the complaint, did appellant complain about the plea agreement or the judgments entered pursuant to it.

In Count II, appellant charged appellees with two kinds of misrepresentation. First, he claimed that, to induce him to retain them, appellees deliberately misrepresented to him their experience and expertise and the amount and type of work they would do on his behalf. Second, he asserted that they further misrepresented to his "representatives"—presumably his newly retained attorneys—the amount and type of work they had done on appellant's behalf. He averred that these various misrepresentations were deliberate, that they were relied upon, and that, as a result, he was incarcerated for ten months when he was eligible for bond if appellees had only requested one, he lost real and personal property, he paid $30,000 in legal fees for services that had little value to him, and his credit rating was adversely affected.

Count III charged appellees with "regularly and systematically convert[ing] to their own use numerous valuable items of personal property belonging to [appellant]," the value of which he asserted to be in excess of $30,000. In Count IV, he alleged that appellees entered into an agreement to deprive appellant of his legal rights in the pending criminal case, to cause his continued incarceration despite his legal right to bond, and to convert his real and personal property. Finally, in Count V, appellant claimed a right to an accounting of the money he had paid appellees and the services they had performed.

### Procedural History

After having answered the complaint, appellees moved to dismiss Count I on the ground that appellant had failed to plead any cognizable harm from appellees' alleged malpractice. This was based on the fact that appellant had never attacked his Federal conviction or sentence and, on the supposition that he had eventually received credit for his pre-trial detention, that that detention had caused him no harm.

At the hearing on that motion, appellees made an oral motion to dismiss Count II as well, also on the ground that it failed to allege any harm to appellant. Although no motion was made to dismiss Counts III or IV, the court not only agreed with the views expressed by appellees as to Counts I and II but concluded as well that Counts III and IV also failed to state a cause of action. All four counts were therefore dismissed.

As noted, Count V was referred to an auditor who, after considering such evidence as the parties offered, concluded that, based on appellees' time records and the rates specified in a retainer agreement, appellees were entitled to a total fee of $48,554, that they had previously been paid $26,618, and that there was due to them by appellant the remaining sum of $21,936. Upon the overruling of appellant's exceptions, that finding was subsequently ratified by the court.

Appellant raises three issues in this appeal:

"1.   Whether it is a prerequisite in a legal malpractice action arising from a criminal case, where a wrongful criminal conviction is *not* one of the damages for which compensation is sought, that the plaintiff first establish ineffective assistance of counsel in a post-conviction proceeding in the criminal case.

2.   Whether the Trial Court erred in dismissing counts of a Complaint alleging wrongful conversion and civil conspiracy on the basis of collateral estoppel where no motion to dismiss, written or oral, had been made directed to those counts and where there had been no previous proceeding at which such issues had been necessarily decided or actually adjudicated.

3.   Whether the Trial Court erred in ratifying the Auditor's Report on Appellant's claim for an accounting, where the Auditor made a fee award to Appellees despite no counterclaim for fees having ever been filed, and where the Auditor penalized Appellant for failing to produce an expert to comment on a Statement of Services which was not produced by Appellees until the day of the Auditor's hearing."

## *The Malpractice Claim*

■   The question, as framed by appellant, is an interesting one of first impression in Maryland.   The trial court regarded the case as requiring an answer to that question.   It does not.

The argument made by appellees is that, in order to recover damages based upon the inadequacy of an attorney's representation of the plaintiff in a criminal case, the plaintiff must establish, under the standards set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), that (1) the defendant's performance fell below the standard for an attorney of reasonable skill and diligence, and (2) there was actual prejudice to the defense as a result of the negligence.   They further assert that this showing must be made either in the criminal proceeding itself or in a collateral attack on the judgment entered in that proceeding, and point out that many other state courts appear to have so held.   *See*

*generally* Gregory G. Sarno, Annotation, *Legal Malpractice in Defense of Criminal Prosecution,* 4 A.L.R.5th 273 (1992).

We think that the circuit court accepted that argument and based its dismissal on it. We say we think that is so because the precise basis for the court's ruling is not altogether clear. In explaining its rationale for dismissing Count I, and ultimately Counts II, III, and IV as well, the court stated:

> "As The Court has reviewed all of the authorities in the area, it is quite clear that most of them require that there be an ineffective assistance [of] counsel claim brought in the appropriate forum prior to bringing a malpractice case. He [appellant] was advised of his rights, he did not take advantage of them, and under all of those circumstances, this Court believes that these issues are barred *by collateral estoppel.*"

(Emphasis added).

It is the reference to collateral estoppel that clouds the issue, for that doctrine necessarily assumes that there has, in fact, been a prior proceeding in which the factual issues sought to be raised here were considered and adjudicated on their merits. *MPC, Inc. v. Kenney,* 279 Md. 29, 367 A.2d 486 (1977). There has been no such proceeding; the deficiencies alleged in appellant's complaint have not been previously raised and adjudicated, and so the doctrine of collateral estoppel cannot apply to bar them now. This was, quite properly, conceded by appellees at oral argument before us.

It appears that the court's reference to collateral estoppel was simply a case of misspeaking, and that the rationale actually employed was a notion of exhaustion of other remedies—that no civil action for malpractice could be brought against appellees unless and until appellant first established in a direct or collateral attack upon the conviction that their assistance had been Constitutionally deficient and that, as a result, he had suffered sufficient prejudice to warrant vacation of the judgment of conviction. We discern that to be the basis of the court's ruling for two reasons: first, it was the argument offered by appellees in support of their motion to dismiss

Count I; and second, because, in announcing its decision, the court cited and appeared to rely upon a law review article taking that position. Susan M. Treyz, Note, *Criminal Malpractice: Privilege of the Innocent Plaintiff?*, 59 Fordham L.Rev. 719 (1991).

We need not consider here whether, in an appropriate case, that view correctly states the Maryland law, for this is not an appropriate case for the application of such a doctrine in any event. Although he asserts in his complaint a number of failings on the part of appellees in the manner in which they handled his case, appellant has never asserted that his conviction or sentence were the product of those alleged failings, or were otherwise unjust or unlawful. He claims to be satisfied with the ultimate outcome of the criminal proceeding and therefore had no reason to attack that outcome, directly or collaterally. He recognizes that his conviction and sentence were the result of a plea agreement that he negotiated with the Government while represented by other counsel, and he does not suggest that he was forced into entering such an agreement because of any failing on appellees' part.

The thrust of appellant's complaint is that (1) appellees' lack of diligence and aggressive representation caused him to remain in pre-trial detention longer than was necessary, and (2) as a result of that and as a result of other, unspecified, lack of effective representation, he suffered some loss of property. No direct or collateral attack on his conviction could possibly have resolved those complaints.

Appellees contend, however, that, for reasons of public policy, the law should not permit a malpractice claim against an attorney based on ineffective representation in a criminal case unless the plaintiff can show that the end product of that malpractice *was* an unjust conviction or sentence. They urge that the law not recognize any prejudice short of wrongful conviction or sentence and thus, in particular, that it give no regard to a claim of unnecessary pre-trial detention which, they contend, can never be prejudicial because, as a matter of

law, the plaintiff/criminal defendant must receive credit for it when the ultimate sentence is imposed.

We reject that argument. For one thing, it overlooks the case in which the plaintiff was ultimately acquitted, placed on probation without entry of judgment, had imposition of sentence suspended, or had execution of sentence suspended. In those situations, the plaintiff would not have received credit for pretrial detention, for there would be nothing against which to apply the credit, and, if that detention was indeed the result of attorney malpractice, the plaintiff would certainly have suffered harm.

Nor can we discern any public policy reason for refusing, as a matter of law, to recognize harm short of an unjust and unsatisfactory end result. Such harm can accrue from malpractice, in both civil and criminal proceedings, and, if sufficiently distinct from the ultimate judgment, there is no reason why, if the other elements of the tort are shown, the law should not allow compensation for it. We do not suggest, and certainly do not hold, that every alleged misstep along the way suffices to support a malpractice claim, simply because some additional cost, delay, expense, deprivation, or annoyance may result, where no complaint is made about the ultimate judgment. It is only where the malpractice produces a specific and significant harm that is distinct from and not, in an overall sense, compensated for by the ultimate judgment that an action may lie. It is in this light that we turn to examine the sufficiency of Count I.

The ten asserted negligent acts or omissions set forth in paragraph 10 of the complaint are noted above. In paragraph 11 of the complaint, appellant lists the damages he alleges were proximately caused by the negligent acts of appellees: (1) incarceration for ten months, (2) loss of real and personal property, (3) payment for services with little or no value and no benefit, (4) loss of credit and eligibility for refinancing of his real property, (5) physical injury suffered while incarcerated, and (6) psychological and emotional distress.

The major problem that we see, except as to the pre-trial detention, is the lack of any asserted connection between the alleged negligence and the alleged harm. There is nothing in the complaint to indicate how any of the other various failures and disclosures alleged in paragraph 10 caused any of the other harm alleged in paragraph 11. The closest appellant comes is in alleging, in paragraph 10, the "[f]ailure to take reasonable and necessary steps to preserve, protect and maintain plaintiff's real and personal property" and alleging, in paragraph 11, that appellee's collective failures resulted in "[l]oss of real and personal property."

We do not regard that as sufficient. Although a pleading should not contain unnecessary evidence, it does need to contain "such statements of fact as may be necessary to show the pleader's entitlement to relief." Md.Rule 2–303(b). The Rule expresses the requirement laid down in *Fletcher v. Havre de Grace Co.*, 229 Md. 196, 200, 177 A.2d 908 (1962), that the subject matter of a claim must be stated "with such reasonable accuracy as will show what is at issue between the parties, so that, among other things, the defendant may be apprised of the nature of the complaint he is required to answer and defend." *See also Campbell v. Welsh,* 54 Md.App. 614, 631, 460 A.2d 76, *cert. denied,* 297 Md. 108 (1983). At a minimum, the complaint needs to inform appellees of what duties they had with respect to appellant's property, how they violated those duties, and the nature of the harm or loss that resulted from those violations. None of that can be gleaned from the complaint.

The averments as to the pre-trial detention are not much better. Appellant alleges that appellees failed to take any measures to seek appellant's release on bond and that, as a result, he remained incarcerated for approximately ten months "when [appellant] was eligible for bond if defendants had only requested it." That is all the complaint says. There is no allegation in Count I that appellant specifically directed appellees to seek his release on bond or that, at any time during their representation of him, he would have been able to

post bond. During the hearing on the motion, appellant's attorney revealed that (1) appellant remained in pre-trial detention until June, 1988—six months after new counsel had entered their appearance; (2) in August, 1987, prior to appellees' employment, there had been a bond hearing before a U.S. Magistrate, that the pretrial release agency at that time had recommended appellant's release on a $150,000 bond, but that appellant was not released; and (3) he could not prove through the testimony of any Federal judicial officer that appellant would, in fact, have been released prior to June, 1988.

We do not regard the averments regarding pre-trial detention as sufficient, especially in light of these admissions. The fact that a defendant may be "eligible for bond" does not imply that he would have been released on bond had a request been made, and, indeed, the information supplied to the court in argument suggests that he likely would not have been so released at that time.

It is for these reasons that we shall affirm the dismissal of Count I.

### The Other Counts

Appellant complains that the court dismissed the other three counts despite the fact that no motion to dismiss them had been made by appellees. As we observed, appellees did move orally to dismiss Count II, so the lack of a motion applies only to Counts III and IV. That is not fatal, however. As the Court pointed out in *Goins v. State*, 293 Md. 97, 111, 442 A.2d 550 (1982), unless fettered by a Rule or statute, a court ordinarily may take any action *sua sponte* that it can take in response to a motion, including dismissal of an action. *See also Link v. Wabash R.R.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). Moreover, an examination of the complaint indicates that the court was correct when it did so.

In his fraud count, appellant essentially reiterated the same charges and allegations as were in the legal malpractice count. The same lack of nexus between the wrongful

conduct and any harm suffered by him that justifies the dismissal of the malpractice claim also justifies dismissal of the fraud count. In the conversion count, appellant listed property that was allegedly converted and asserted that the conversion was "wrongfully done, without [appellant's] permission or knowledge, and was against his proprietary interest [and that it was] done by [appellees] with the intent to exercise dominion and control over [appellant's] goods, which dominion and control were inconsistent with [appellant's] rights." As the court below correctly noted, the complaint does not specify what appellees did—how the property was converted or lost. Thus, it inadequately states a claim for conversion. Since the other tort claims fail, the conspiracy count, which alleges an agreement among appellees to commit the other tortious acts complained of, must also fail.

### The Auditor's Report

Appellant raises two issues with regard to the Auditor's Report. He questions the award to appellees in light of the undisputed fact that they did not file a counterclaim and challenges the Auditor's reliance on the absence of expert testimony to refute the Accounting of Time Spent. We find no error in the auditor's efforts or the court's affirmance of them.

The standard of review of an auditor's decision is essentially the same as that for a master's decision. Findings of fact are not to be set aside unless clearly erroneous. *See Maryland Lumber Co. v. White*, 205 Md. 180, 107 A.2d 73 (1954). The trial court must exercise its own judgment as to the conclusions of law and recommendations made. *See Domingues v. Johnson*, 323 Md. 486, 593 A.2d 1133 (1991).

We begin by noting that, in an action for an accounting, the auditor may recommend and the court may order the payment of monies from plaintiff to defendant without the defendant having filed a cross-claim or counterclaim. This was settled in *American Bonding Co. v. State*, 120 Md. 305, 313, 87 A. 922 (1913), where the Court adopted the following

principle from *Goldthwait v. Day*, 149 Mass. 185, 21 N.E. 359 (1889):

> "When a bill is brought upon such an account it implies that there are items on both sides, and that the balance is uncertain until ascertained by the aid of the Court. It seeks to have the balance ascertained and paid, and as a condition of being entertained it imports an offer, which formerly it was required to express, on the part of the plaintiff, to pay the balance if it should turn out against him. * * * Under such a bill, the defendant has nothing to plead in order to get the advantage of it. His claim is not an independent one, but is admitted and asserted by the plaintiff, provided the items on his side exceed those on the plaintiff's side."

Thus, the fact that appellees did not file a counterclaim for fees does not disqualify them from receiving a fee award where the Auditor decides such is warranted.

■ In his report, the auditor concluded that the parties had reached a fixed fee agreement—$50,000 to represent appellant in the Federal case. The auditor found that, at various times during and after the period of representation, appellant requested an accounting from appellees and never received one. He noted appellees' testimony that, because they were on a fixed fee basis, they did not maintain records of time spent in representing appellant. Nonetheless, at the hearing before the auditor, they produced an accounting of the time they each spent in that representation which, when multiplied by their respective hourly rates, came to $48,554, in the aggregate.

Based in part upon the earlier dismissal of the tort claims, the auditor concluded that, although appellant had a right to terminate appellees' employment, he did so without just cause. Thus, the auditor concluded that appellees were entitled to compensation for the reasonable value of their services. *See Skeens v. Miller*, 331 Md. 331, 628 A.2d 185 (1993). Appellees set forth the time they claimed was spent and testified that the hourly rates they applied to that time were reasonable.

The auditor noted that no controverting expert evidence was offered by appellant. In that regard, he observed:

"The Auditor acknowledges [appellant] is in a difficult position. He requested an accounting but had no way of refuting the accuracy of the time records. Yet, no expert testimony was offered to show [appellees] utilized more time than was necessary; that the fees were more than reasonable, that the quality of representation was less than it should have been or any testimony refuting the need of some services rendered by [appellees]. In short, [appellant] failed to meet the burden of proof. Thus, the only testimony before the Auditor is that of [appellees] showing the reasonable value of services to be $48,554.50 and that they have received a part payment of $26,618.55."

In an action for an accounting, the plaintiff normally has the burden of proving the amount he believes he is entitled to recover. Although a defendant, as discussed above, need not file a counterclaim because one is implicit in the action, he nevertheless would have the burden of proving any amount he believes he is entitled to recover. As appellees were claiming that they were entitled to an amount above that previously paid by appellant, they had the burden to justify their entitlement to that amount. The evidence in that regard came in two forms: (1) evidence as to the hours spent and the rate charged, and (2) evidence as to the reasonableness of the rate and the necessity for and reasonableness of the work done. Expert testimony was needed only with respect to the second element; the first is factual in nature and can be established through non-expert evidence.

The transcript of the proceedings before the auditor indicates that each side presented evidence as to the hours spent, creating a factual dispute. The auditor obviously credited appellees' version of the amount of time spent, and it was within his discretion to do so. Whether the work done was reasonably required and whether the rates sought to be applied by appellees were reasonable were questions for expert testimony. Appellee Longest testified that the work

done was reasonable and necessary and that the fees were reasonable. That testimony could be refuted only by an expert, but appellant did not present one. If, because of appellees' earlier claim that they had not kept time records, appellant was surprised and disadvantaged by the production of such records before the auditor, he could have sought a continuance in order to gather evidence (including expert testimony) that he did not anticipate the need to produce. The record indicates no such request, however. We are thus left with the fact that the auditor, faced with uncontradicted testimony as to the reasonableness of the services rendered and the amounts sought to be collected for those services, was entitled to and did credit it. The auditor had before him competent evidence on the hours spent and uncontradicted testimony on the reasonableness of the work done. We therefore cannot conclude that his factual findings were clearly erroneous or that the circuit court's ratification of his report was erroneous.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.