E. A. WIGGENHORN ET AL., PLAINTIFFS IN ERROR, V. JACOB KOUNTZ, DEFENDANT IN ERROR.

1. **Riparian Rights:** ACCRETIONS: TRESPASS. Where an island in the Platte river had been surveyed by the United States and sold to a party who received a patent therefor, such party or his grantee will become the owner of any accretions to such island or of land formed by avulsion from the washing away of

the upper part of the island and the sudden formation of new land on the lower end thereof, and a party cutting trees growing upon the land so formed will be liable to the owner thereof in trespass.

2. ——: ——: FILUM AQUÆ. While the general rule is, that a grant of land on a stream not navigable includes all islands or parts of islands between the shore and the centre thread of the stream, unless reserved, yet, where there is a clear reservation of the islands, either expressly or by necessary implication, they do not pass to the grantee, and the *filum aquæ* which bounds the grant is the centre thread between the shore and the island. In such cases two *fila aquæ* are established—one on each side of the island.

3. ——: MAIN-LAND: ISLANDS: SEPARATE SURVEYS. Where the main-land and an island have been separately surveyed, and purchased by different parties as distinct tracts, the grantees of the main-land cannot claim the island as included in their grant.

4. Motion for New Trial. Where two or more parties are sued jointly, and there is a verdict and judgment against them, and either defendant desires to raise a question peculiar to himself in the motion for a new trial, he should file a separate motion and not join with the other defendants.

ERROR to the district court for Saunders county. Tried below before POST, J.

*T. B. Wilson, J. B. Strode,* and *Sam M. Chapman,* for plaintiff in error, cited: *Bissell v. Fletcher,* 19 Neb., 727. *Hopkins v. Dickinson,* 9 Cush., 548. *Middleton v. Pritchard,* 3 Scam., 521. *Porter v. White,* 13 Wis., 625. *Miller v. R. R. Co.,* 71 N. Y., 384.

*C. Thompson,* for defendant in error, cited: *Buse v. Russell,* 86 Mo., 209. *Lammers v. Nissen,* 4 Neb., 245. 3 Washburn Real Prop., 452. *Woodbury v. Short,* 17 Vt., 387.

MAXWELL, J.

The defendant in error brought an action against the plaintiffs, in the district court of Saunders county, to re-

cover the value of certain trees cut down by, and converted to the use of, the plaintiffs in error. The defendant in error alleges, in his petition, "That from the 7th day of December, 1871, until the 29th day of November, 1882, he was the owner in fee simple, and in the possession of lot one in section thirty, in township thirteen north, of range ten east, in Saunders county; that on or about the first day of September, 1881, and between that date and said 29th day of November, 1882, and while plaintiff was the owner and in possession of lot one aforesaid, the said defendants, Ernest A. Wiggenhorn, John Johnson, and Emery A. Clossen, unlawfully and with force broke and entered upon the plaintiff's said land, described as follows, to-wit: Lot one, in section thirty, in township thirteen north, of range ten east of the 6th principal meridian, Saunders county, the state of Nebraska, and then and there cut down one hundred cottonwood trees belonging to plaintiff, and then growing on said land, and of the value of one hundred and ninety dollars, and carried the same away and converted them to their own use to the plaintiff's damages in the sum of $190.

Johnson filed an answer to the petition, in which he alleges, in substance, that he was employed by Wiggenhorn to cut the trees in question, and that Wiggenhorn informed him that he had lawful authority to cut said trees.

Wiggenhorn and Clossen answer jointly, denying the facts stated in the petition.

On the trial of the cause a verdict in favor of Kountz, and against all the plaintiffs in error, for the sum of $25 was returned. A motion for a new trial was thereupon filed and overruled, and judgment entered upon the verdict.

The testimony shows that, at the time stated in the petition, the defendant in error was the owner of lot one, section 30, T. 13 N., range 10 east. The land was entered

prior to the year 1860, and a patent issued in that year, under which the defendant in error claims title. The lot in question is an island situated in the Platte river, there being a well defined channel on each side of said island. In the year 1867, during high water in the Platte river, the upper part of said island was washed away, and the testimony tends to show formed an accretion to the lower end of said island. The timber in question was cut on the land thus formed at the lower end of the island. That sixty trees from 8 to 15 inches in diameter were cut on this land, and used as piles on Mr. Wiggenhorn's mill-dam, is proved beyond controversy. There is some dispute in the testimony as to whether Mr. Johnson was hired by Wiggenhorn, or sold him the piles; also whether Clossen was employed by Wiggenhorn or Johnson, but in the situation of the case the particulars as to the transaction are not material. All three participated in the trespass, and Mr. Wiggenhorn procured the trees, for which he claims to have paid Johnson $32. The proof shows that the trees, for the purposes for which they were used, were worth from $2 to $2.75 each.

The principal defense relied upon is, that the land on which the trees grew was not the property of Kountz, but was public land, to which all had equal rights; and it is claimed further, that the land thus suddenly formed would belong to the parties owning the main-land bordering on the river near said island. These questions will be considered in their order.

In *Lammers v. Nissen*, 4 Neb., 245, Judge Gantt, in defining the word accretion, says: "That an accretion to land is the imperceptible increase thereto on the bank of the river by alluvial formations, occasioned by the washing up of sand or earth, or by direliction, as when the river shrinks back below the usual water-mark; and when it is by addition, it should be so gradual that no one can judge how much is added each moment of time. And when the

formation of land is thus imperceptibly made on the shore of a stream, by the force of the water, it belongs to the owner of the land immediately behind it, in accordance with the maxim, *de minimis non curat lex*.    It is said that no other rule can be applied on just principles, for the reason that every proprietor whose land is thus bounded, is subject to loss by the same means which may add to his territory, and as he is without remedy for his loss in this way, he cannot be held accountable for his gain."

In speaking of an avulsion, Washburn R. P. (4th Ed.), Vol. 3, p. 60, says:    "Cases sometimes occur where considerable quantities of soil are, by the sudden action of water, taken from the land of one and deposited upon or annexed to the land of another.    The difference between avulsion, as the latter process is called, and alluvion, consists in the one being done by imperceptible loss from the land of one, and increment to that of the other, and in the other, its being done suddenly, to an extent which can be ascertained and measured.    In the case of avulsion the soil still belongs to the first owner, unless he shall have suffered it to remain in its new position until it cements and coalesces with the soil of the second owner; in which case the property in the soil will be changed and no right to reclaim it remain."

If it be conceded, therefore, that the land so formed at the lower end of the island in question was formed suddenly, by washing the soil from the upper end of the island to the lower, the soil would still remain that of the owner of the island, and a person cutting trees on the land so formed would be liable for the same.

The plaintiffs in error strenuously contend, in substance, that, as a grant of land on a stream not navigable includes all islands or parts of islands between the shore and the centre thread of the stream, that therefore the land on which the trees grew belonged to the owner of the mainland on the river adjacent to such islands.

There is no doubt of the rule that grants of land bounded upon a river not navigable carry with them the exclusive right and title of the grantee to the centre of the stream, unless the terms of the grant clearly denote the intention to stop at the edge or margin of the river, the rule of the common law being that proprietors of land adjoining public rivers not affected by the flow of the tide own the soil *ad filum aquæ.* 3d Kent's Commentaries, 427.

In *Ingraham v. Wilkinson,* 4 Pick., 273, the supreme court of Massachusetts say: "The doctrine of alluvion and its consequences seems to be very clearly settled. That which is formed by gradual accretion belongs to the owner of the soil to which it adheres. The land which may be separated from a man's farm by a sudden change of the bed of the river may be reclaimed by him who lost it. Islands formed in the river, if altogether on one side of the dividing line, the *filum aquæ,* belong to him who owns the bank on that side: if formed in the middle of the river, they are appropriated to the owners on each side, not in common, but in severalty, according to their original dividing line, the *filum aquæ,* as it is where the waters begin to divide. Such is the civil law, and the justice of this appropriation cannot be questioned. If the *filum aquæ* divide itself, and one part take the east and the other the west, and leave an island in the middle between both *fila,* the one-half will belong to the one lord and the other to the other."

In *Trustees, etc., v. Dickinson,* 9 Cush., 548–9, it is said: " In the case just now supposed, of an island arising in the middle of the river, it is divided by that line which was the thread of the river immediately before the rise of the island. But that line must thenceforth cease to be the thread of the river, or *filum aquæ,* because the space it occupied has ceased to be covered with water. But, by the fact of an island being formed in the middle of the river, two streams are necessarily formed by the original river dividing it into two branches; the island itself hav-

ing become solid land, forms itself a bank of the new stream on the one side and the old bank on the main shore forms the other. And the same rule applies on the other side of the island. There must, then, be a *filum aquæ* to each of these streams, whilst the old *filum aquæ* is obliterated to the extent to which land has taken the place of water. But this island, having all the characteristics of land, may soon be divided and subdivided, by conveyances and descents, and all the modes of transmission of property known to the law, and thus become the property of different owners. Now suppose another island is formed in one of these branches, between the first island and the original main shore. It seems to us that it must be divided upon the same principle as the first; but, in doing it, it will be necessary to assume as the *filum aquæ* the middle line between the first island and the original river bank on that side."

Where the main-land and an island have been separately surveyed and sold by the government to different parties, the grantees of the main-land do not by such grant acquire the island. In such case, the grant to each being separate and distinct, neither can claim beyond the calls of his entry and patent. The rule is, that where there is a clear reservation of islands in a grant of main-land adjacent to a river, either expressly or by necessary implication, such islands do not pass to the grantee, and the *filum aquæ* which bounds the grant is the centre thread between the shore and the island. In such cases, two *fila aquæ* are established, one on each side of the island. *Stolp v. Hoyt*, 44 Ill., 223. *Hopkins Academy v. Dickinson*, 9 Cush., 544. *People v. Canal Appraisers*, 13 Wend., 355. *Buse v. Russell*, 86 Mo., 209.

In the case under consideration, it is clearly shown that there is a well-defined channel of the river on each side, between the main-land and the island. The grant of the main-land, therefore, would, at the most, merely extend to

the centre thread of the stream between the shore and the island, so that in no event could an owner of the main-land claim an interest in the island.

Some objection is made that the evidence is not sufficient. to justify a verdict against Clossen. There is but little doubt that Mr. Wiggenhorn was the party really benefited by the cutting of the trees, and apparently he should be liable for the damages resulting therefrom. This question, however, cannot be determined in this action, as the motion for a new trial is joint. There is no error in the record, and the judgment is affirmed.

JUDGMENT AFFIRMED.

COBB J., concurred.

REESE, CH. J., having been of counsel in the subject-matter of the suit, did not sit.