CATHERINE M. O'CONNOR ET AL., APPELLEES, V. ADA M.' L.
PETTY ET AL.; LEARY P. HALL ET AL., APPELLANTS.

FILED APRIL 3, 1914.   No. 17,427.

1. **States**: BOUNDARIES: RIVERS. The boundary between Iowa and
   Nebraska follows gradual and imperceptible changes in the main
   channel of the Missouri river.

2. ———: ———: ———. A change by avulsion in the main chan-
   nel of the Missouri river does not change the boundary line be-
   tween Iowa and Nebraska.

3. **Quieting Title**: JURISDICTION. In a court of Nebraska, an action
   to quiet title should be dismissed, when it is found that the land
   in controversy is in Iowa.

APPEAL from the district court for Dakota county: GUY
T. GRAVES, JUDGE. *Reversed and dismissed.*

*R. E. Evans* and *Edwin J. Stason,* for appellants.

*A. M. Morrissey* and *A. Van Wagenen, contra,*

ROSE, J.

This is a suit to quiet in plaintiffs title to lands between
an abandoned channel of the Missouri river and its present
channel. Plaintiffs claim to be riparian owners of
definitely described, separate tracts in Dakota county,
Nebraska. Defendants allege that the land in controversy
is in Woodbury county, Iowa. The rival parties claim the
territory in controversy as accretions to their riparian
lands. From a decree in favor of plaintiffs, defendants
have appealed.

One of the defenses pleaded is that the land in contro-
versy is in Iowa, and that therefore the Nebraska courts
are without jurisdiction to determine the issues. This de-
fense seems to be established. Referring to the boundary
line between the states as running north and south, the
present channel is in places two miles east of the aban-
doned channel, and the river was formerly still farther
east. For many years prior to 1893 the river gradually

changed from its extreme eastern channel westward be-
yond the present channel to the abandoned channel along
the Nebraska bank. In the brief of plaintiffs it is conceded
that the river in working westward moved gradually. This
is shown by the evidence. Under well-settled principles of
law, therefore, the boundary line between the states fol-
lowed the center of the main channel to its western ex-
tremity. *Rober v. Michelsen*, 82 Neb. 48. The course of
the river, the velocity of the current where it washed the
Nebraska bank, maps, and convincing proof of witnesses
lead inevitably to the conclusion that the center of the
main channel, or the boundary between the states, was, in
1893, west of the land claimed by defendants. During that
year, and for some years prior thereto, what is called in the
record a "chute" marked the course of the present channel.
The testimony indicates that, during floods, water poured
through this chute, that in ordinary stages of the river
there was little or no current there, and that in dry periods
the water disappeared or stood in pools. The parties do
not agree as to how or when this chute was formed. Plain-
tiffs contend that it was never land as distinguished from
riverbed, and that it was the natural result of continuous
action of the waters of the stream. The position of defend-
ants seems to be that the chute was made in dry sand by
the action of the wind after the river had passed its loca-
tion in gradually working westward. Whatever the proper
explanation may be, it is clear that the chute, before it was
appropriated by the river as the present channel, which it
now is, was not the main channel forming the boundary
line between the states. From all of the evidence it seems
clear that the change from the western channel to the chute
occurred during a flood in 1894. It is certain that the old
channel was abandoned. It is equally clear that the chute
was an inviting course for a sudden change during a flood.
While river waters occupied the western or abandoned
channel during the years 1895 and 1896, and perhaps lon-
ger, the main channel suddenly changed from the old to
the new, within the meaning of the law of avulsion, with-
out changing the boundary between the states. *Nebraska*

*v. Iowa*, 143 U. S. 359; *Missouri v. Nebraska*, 196 U. S. 23. The land in controversy being between the abandoned channel and the present one, plaintiffs argue that, prior to the change, the disputed territory was riverbed as distinguished from land, that the river shifted its course about sand bars and that therefore the state boundary followed such changes in the channels. In discussing this phase of the case, however, plaintiffs do not question proof that, out of a tract consisting of more than 1,200 acres, at least a body of 100 acres was not swept away by the flood of 1894, though the river shifted its course two miles in places. The conclusion is that the land claimed by defendants is in Iowa, and that the district court was without jurisdiction. The judgment is therefore reversed and the action dismissed.

REVERSED AND DISMISSED.

LETTON, FAWCETT and HAMER, JJ., not sitting.