INDEPENDENT STOCK FARM, APPELLEE, v. W. W. STEVENS, APPELLANT.

FILED MARCH 29, 1935.  No. 29143.

*George W. Leamer,* for appellant.

*Sidney T. Frum* and *Henderson, Hatfield & Wadden,* contra.

Heard before ROSE, GOOD, EBERLY, PAINE and CARTER, JJ., and THOMSEN, District Judge.

PAINE, J.

This is a suit to quiet title to accretions to riparian lands in Dakota county, and to enjoin entry thereon. From a decree for plaintiff, the defendant Stevens appeals.

The plaintiff, a Nebraska corporation, claims that it is the owner of certain lands in Dakota county along the Missouri river, and asks that the title to these lands be quieted in it as against the claims of the defendants. It further asks that the defendants be permanently enjoined

from entering upon or asserting title to said lands. A temporary injunction was issued by the district court in accordance with the prayer of the petition.

After a special appearance and certain motions had each been overruled, the defendants filed their answer, denying the allegations of plaintiff's petition, and asserting that the plaintiff has never cultivated, pastured, or been in possession of any of the lands claimed in its petition, nor made claim to such lands prior to filing its petition in this case, at which time it forcibly took possession by moving a building thereon and having an agent go upon the land, who shot at the defendants with a high-powered rifle, driving them from the land, and ask that plaintiff's petition be dismissed.

For its reply, plaintiff denies that the case of *O'Connor v. Petty*, 95 Neb. 727, involved the title or the possession of any part of the land involved in this suit, and no part of the land involved in the instant case was therein determined to be in the state of Iowa; that neither the plaintiff nor any of its grantors were parties to said suit, and are therefore not bound in any way by the decision therein.

Plaintiff further alleges that the defendants have never been in possession of any part of the land described in plaintiff's petition, except as trespassers upon a small part thereof, and plaintiff claims to be the owner and in possession of every part thereof.

To state the contentions more briefly, the pleadings set out that plaintiff claims the land in controversy in the instant case because it is accretion to its riparian land. The defendants, on the other hand, as one of their defenses, claim that this court, by the decision in *O'Connor v. Petty*, *supra*, decided that all of the land which defendants have been cultivating and pasturing is in the state of Iowa, and therefore this court has no jurisdiction thereof.

Among the errors set out by the defendant for reversal may be mentioned: That the court erred in finding it had jurisdiction over the land in controversy, and in finding

that the land in controversy was accretion land to plaintiff's land, rather than to defendant's land, and in finding that plaintiff had legal title thereof.

Many references are made in the briefs to a certain Omaha creek as the dividing line between the states of Iowa and Nebraska, but we are unable to find that this creek was mentioned, or declared to be the boundary line, in our decision of *O'Connor v. Petty, supra,* as the defendants claim.

The Missouri river often changes its course by avulsion, as it did in 1894. This means that, suddenly, or by violent action of the elements, it leaves its old channel and creates a new one. In such cases the original thread of the stream continues to mark the limits of the two estates, and land which is so cut off can be followed and identified, and its title remains in the original owner. *Nebraska v. Iowa,* 143 U. S. 359; *Attorney General v. Bay Boom Wild Rice & Fur Co.,* 172 Wis. 363; *Harper v. Holston,* 119 Wash. 436; *De Long v. Olsen,* 63 Neb. 327.

On the other hand, the land in controversy is claimed by accretion, which is a different process. The leading case upon this subject of accretion is *Gifford v. Yarborough,* 5 Bing. (Eng.) 163, 130 Eng. Rep. (Reprint) 1023, decided in 1828, in which the House of Lords had before it a question involving the ownership of land which had been added along the shore of the sea, which question was stated by Chief Justice Best as follows: "A certain piece of land, consisting of about 450 acres, by the slow, gradual, and imperceptible projection, alluvion subsidence, and accretion of ooze, soil, sand, and matter slowly, gradually, and imperceptibly, * * * deposited * * * in, upon, and against the outside and extremity of said demesne lands hath been formed, and hath settled, grown, and accrued upon, and against, and unto the said demesne lands. Does such piece of land so formed, settled, grown, and accrued as aforesaid, belong to the crown or to A., the owner of the said demesne lands?" After an interesting discussion of the ancient and modern law, it was held: "Land, not

suddenly derelict, but formed by alluvion of the sea, imperceptible in progress, belongs to the owner of the adjoining demesne lands, and not to the crown."

It is difficult to improve the definition given in the English case referred to, and yet it must be shortened for ordinary use. Accretion is the process of gradual and imperceptible addition of solid material called alluvion, thus extending shore line by deposits made by contiguous waters. Land uncovered by a gradual subsidence of water is not an accretion, but a reliction. The same law applies to both these forms of addition to real estate which are held to be the property of the abutting landowner. *Bigelow v. Herrink*, 200 Ia. 830; *Hanson v. Thornton*, 91 Or. 585; Farnam, Waters and Water Rights (1904) 324; *Haney v. Hewitt*, 105 Neb. 746; *Jefferis v. East Omaha Land Co.*, 134 U. S. 178; 12 Neb. Law Bulletin, 385; 1 R. C. L. 226, sec. 1.

All states do not agree as to the ownership of land along navigable streams like the Missouri river. In Nebraska this court, after the rehearing in the case of *Kinkead v. Turgeon*, 74 Neb. 580, 7 L. R. A. n. s. 316, 13 Ann. Cas. 43, held that riparian owners are entitled to the possession and ownership of the soil formerly under the waters of such a stream as far as the thread of the stream, while in other states the title to the bed of the navigable river is in the state, and the grantee of land along the line of such stream owns only to the shore line. *Haight v. City of Keokuk* (1856) 4 Ia. 199; *Payne v. Hall*, 192 Ia. 780. So that if an island occurs in the Missouri river on the Iowa side of the thread of the stream, it is an accretion to the soil in the bed of the river, and not to the land of the riparian owner.

In the instant case the weight of the evidence indicates that there has been a gradual accretion of land to that of the plaintiff, beginning shortly after the avulsion of 1894 and amounting to a very considerable tract of land. Upon this made land, willows and cottonwoods took foot and grew, and in time grasses were found there, making it

useful for pasture; however, very little of it is yet adapted to farming.

The evidence further shows that what is known as Omaha creek emptied into the Missouri river in years past, after following around the old river bed at a point far to the northeast of plaintiff's high bank, and after the land claimed by accretion as a part of the plaintiff's holdings had been deposited out from and attached to the land of the plaintiff; then the waters of Omaha creek at a later time came down through this accretion land.

The evidence clearly sustains the claim that the formation of the accretion land had gone on to a considerable extent before this little creek cut down across it. In our opinion this does not render void the plaintiff's just claim to this land so formed. We are supported in this holding by several cases, among them *Dowdle v. Wheeler,* 89 S. W. 1002 (76 Ark. 529) which holds: "Where an accretion was begun by a deposit against the shores of the mainland, the subsequent existence of an intermediate stream between the mainland and the accretion does not prevent the accretion from belonging to the owner of the mainland."

This court cannot overlook the fact that the trial court in the instant case went upon the land and made an examination of the topography of the many points in sharp dispute in this case. When the court is trying a case without a jury, it is proper for the court to view the premises for the sole purpose of aiding the court in rightly applying the evidence, but of course the decree cannot be based solely upon such information. 26 R. C. L. 1085, sec. 90; *Moore v. Ryan,* 188 Ind. 345. Although some cases have held this to be in the nature of independent evidence. *Cutting v. Vaughn,* 182 Cal. 151. And if the question is for experts, the court will not consider impressions gained on view as against the opinions of the experts. *Wall v. United States Mining Co.,* 232 Fed. 613.

. In one case, where a rival dressed his store front in close imitation of another in several striking features, it

was said: "A store front cannot be brought into court, and so the court is obliged to go to the store front." *United Cigar Stores Co. v. United Confectioners,* 17 A. L. R. 779 (92 N. J. Eq. 449). This court has held that, when the court views the topography of a certain locality, its findings are entitled to great weight. *Shavlik v. Walla,* 86 Neb. 768; *Chapin v. Village of College View,* 88 Neb. 229; *Keim v. Village of Bloomington,* 119 Neb. 474.

This instant case involves such a close contest over so many points in dispute that the view of the land and water made by the trial court placed it at a vantage point we do not have in passing upon the disputed questions.

The court finds that the defendants, or some of them, after the year 1928, entered upon a portion of said accretion land of plaintiff and cultivated a part thereof, but the evidence shows that no part so used was inclosed, and the defendants have no right or title of any kind to such accretion land.

The court finds that, at the time of filing suit in this case, the plaintiff was in possession of all of the land in controversy, and the title thereto is hereby confirmed in the plaintiff, and the defendants are hereby enjoined from claiming title to, or possession of, any of said land.

The decree of the trial court was right, and is hereby

AFFIRMED.