WILLIAM A. HIGGINS, APPELLANT AND CROSS-APPELLEE, V. JOHN A. ADELSON, APPELLEE AND CROSS-APPELLANT: CHARLES COSNER, APPELLEE.

FILED DECEMBER 18, 1936. No. 29754.

*E. J. Patterson* and *Cleary, Suhr & Davis,* for appellant.

*H. G. Wellensiek, contra.*

Heard before GOSS, C. J., GOOD, EBERLY, DAY, PAINE and CARTER, JJ., and MUNDAY, District Judge.

EBERLY, J.

This is an action in equity to restrain the defendants

from alleged repeated trespasses upon that part of an island in the Platte river, which is unsurveyed (referred to in the record as "Island No. 1"), and of which plaintiff in his petition claims to be the owner by virtue of his ownership of certain riparian lands in section 7, township 14, range 4 west of the sixth P. M. in Merrick county, Nebraska. The petition also alleges that the portion of said island No. 1 claimed by plaintiff is situated south of the north shore of the Platte river and within the extended east and west lines of his riparian lands in said section 7, and at right angles from said lines with the shore line of said river and north of the thread or center line of said river, and further that he is in possession thereof at the time of the institution of this action, and had been in the actual and adverse possession thereof more than ten years prior thereto. These allegations refer to the northeast portion of island No. 1, which is situated in the Platte river opposite the lands of plaintiff. Plaintiff's petition was positively verified, and with it were filed certain affidavits. In this pleading he prayed for the issuance of a restraining order, and that thereafter, upon due hearing, a temporary injunction be allowed restraining the defendants, their agents and servants, from trespassing upon the lands the ownership of which was alleged to be in plaintiff, and that upon final hearing the temporary injunction be made permanent. Upon the filing of these pleadings a temporary restraining order, in terms as prayed, was issued and served upon the defendants. By its terms the application for a temporary injunction was set for hearing on October 9, 1934, and the defendants and their agents were duly restrained from further trespassing upon the premises in dispute until further order of the court, upon plaintiff's executing an undertaking in the sum of $500 as provided by law. This undertaking was duly filed and approved on October 1, 1934, and on that day the usual summons and restraining order were served upon the defendants. Thereafter on November 6, 1934, the defendants demurred to the petition generally. This demurrer, it appears, was never disposed of by the

district court. On February 8, 1935, the defendants filed their answer and cross-petition, in which the ownership of plaintiff of the lands situated in section 7 north of the Platte river was admitted, and all other allegations in plaintiff's petition were denied. For their cross-petition defendants alleged their ownership of the lands in dispute by virtue of adverse possession for more than ten years, and also as accretions to island No. 1; that this island had been surveyed by authority of the United States and title by patent duly derived therefrom was vested in defendant Adelson; that defendants had been deprived of the use of the land in suit for some fifty days, to their damage in the sum of $1,250; and defendants prayed that the prayer of plaintiff's petition be denied; that the restraining order be dissolved; that defendant Adelson's title to the *locus in quo* be quieted; and "that the defendant John A. Adelson have and recover the sum of $1,250 with 6 per cent. interest from October 6, 1934, and costs." To this pleading plaintiff filed his reply, denying each and every allegation in said answer and cross-petition, except "such as admit allegations of the petition."

The record discloses that a hearing on the merits was had, commencing on April 15, 1935, and evidence was introduced on behalf of the parties to this action; that the cause was taken under advisement by the trial court; that thereupon the trial judge inspected the premises in suit; and that on August 7, 1935, a decree was duly entered finding for the defendants and cross-petitioners and against plaintiff; adjudging that the restraining order be dissolved, that the title to the entire premises in dispute be quieted in defendant John A. Adelson, and that defendant Adelson recover from plaintiff William A. Higgins the sum of $50 for damages sustained by the wrongful issuance of the restraining order. Both plaintiff and defendant Adelson thereupon filed their motions for new trial, and from the order overruling the same, plaintiff Higgins appeals, and defendant Adelson has presented his cross-appeal.

The record before us involves two questions which require

consideration of conflicting evidence, viz.: (1) Claims to the legal title of accretions to island No. 1; and (2) conflicting claims of adverse possession thereof.

In this connection, it will be remembered that: "While the law requires this court, in determining an appeal in an equity action involving questions of fact, to reach an independent conclusion without reference to the findings of the district court, this court will, in determining the weight of the evidence, where there is an irreconcilable conflict therein on a material issue, consider the fact that the trial court observed the witnesses and their manner of testifying." *Gentry v. Burge,* 129 Neb. 493, 261 N. W. 854.

So, also, "When the trial court goes upon the premises in controversy, and makes a personal examination of the topography of all of the land and water involved, his findings in reference thereto are entitled to great weight." *Independent Stock Farm v. Stevens,* 128 Neb. 619, 259 N. W. 647.

It appears that island No. 1, of which the land in suit is now a part, existed and was surveyed by the United States government in 1863, as bounded by the Platte river, and platted by use of meander lines to indicate the then shore lines of that stream. The southern line of plaintiff's land in section 7, by virtue of which he bases his claim to the land in suit, is also the Platte river, likewise then platted by use of a meander line.

In *Whitaker v. McBride,* 197 U. S. 510, it is stated: "A meander line is not a line of boundary, but one designed to point out the sinuosity of the bank or shore, and a means of ascertaining the quantity of land in the fraction which is to be paid for by the purchaser. *St. Paul & P. R. Co. v. Schurmeier,* 7 Wall. (U. S.) 272; *Hardin v. Jordan,* 140 U. S. 371; *Horne v. Smith,* 159 U. S. 40." See, also, *Osterman v. Central Nebraska Public Power and Irrigation District; ante,* p. 356, 268 N. W. 334.

Both the plaintiff, as owner of section 7, and the defendant John A. Adelson, as owner in fee of the surveyed portion of island No. 1, have derived title to their respective

properties by and through government patent issued in accordance with this survey of 1863.

It appears without substantial dispute that the general course of the Platte river at the place of dispute is from the southwest to the northeast; that since 1863, due to the action of the waters of the river, silt, sand, earth, and débris have been slowly deposited on the northeast end of island No. 1 in the form of gradual accretions, which resulted in the extension of that island still further to the northeast in a course roughly parallel to the north bank of the river for a distance of more than 2,000 feet from the northeast boundary of the original platted island indicated on plaintiff's map (Exhibit "A-A") as end of island No. 1, Government notes. A river channel still continues to separate this extension from the north shore of the Platte river. This "new-made land" is slightly less in width than the island as originally surveyed, but is physically a part thereof, and an accretion thereto.

The plaintiff contends that this "new-made land" lies between the extended east and west boundaries of his land in section 7, and is north of the thread of the channel of the Platte river as that channel existed at this place prior to the creation of this extension of island No. 1. Therefore, he claims that, by virtue of this ownership of the submerged lands on which this accretion was formed, he became the owner of the legal title in fee thereto. This contention cannot be sustained.

In considering a situation involving similar principles, in *Nebraska v. Iowa,* 143 U. S. 359, Justice Brewer says in part:

"It is settled law, that when grants of land border on running water, and the banks are changed by that gradual process known as accretion, the riparian owner's boundary line still remains the stream, although, during the years, by this accretion, the actual area of his possessions may vary. In *New Orleans v. United States,* 10 Pet. 662, 717, this court said: 'The question is well settled at common law, that the person whose land is bounded by a stream of water,

which changes its course gradually by alluvial formations, shall still hold by the same boundary, including the accumulated soil. No other rule can be applied on just principles. Every proprietor whose land is thus bounded is subject to loss by the same means which may add to his territory; and, as he is without remedy for his loss in this way, he cannot be held accountable for his gain.' (See, also, *Jones v. Soulard,* 24 How. 41; *Banks v. Ogden,* 2 Wall. 57; *Saulet v. Shepherd,* 4 Wall. 502; *St. Clair County v. Lovingston,* 23 Wall. 46; *Jefferis v. East Omaha Land Co.,* 134 U. S. 178.) * * * These propositions, which are universally recognized as correct where the boundaries of private property touch on streams, are in like manner recognized where the boundaries between states or nations are, by prescription or treaty, found in running water. Accretion, no matter to which side it adds ground, leaves the boundary still the center of the channel. * * * Vattel states the rule thus (Book 1, c. 22, secs. 268, 269, 270) : 'If a territory which terminates on a river has no other boundary than that river, it is one of those territories that have natural or indeterminate bounds (*territoria arcifinia*), and it enjoys the right of alluvion; that is to say, every gradual increase of soil, every addition which the current of the river may make to its bank on that side, is an addition to that territory, stands in the same predicament with it, and belongs to the same owner. For, if I take possession of a piece of land, declaring that I will have for its boundary the river which washes its side—or if it is given to me upon that footing, I thus acquire beforehand the right of alluvion; and, consequently, I alone may appropriate to myself whatever additions the current of the river may insensibly make to my land.' "

The title to island No. 1, as surveyed and patented, being vested in the defendant by virtue of the original patent, and the land being bounded by a nonnavigable stream, defendant's ownership carries with it the bed of the river to the center of each surrounding channel. *Wiggenhorn v. Kountz,* 23 Neb. 690, 37 N. W. 603; *Horton v. Niagara, Lockport & Ontario Power Co.,* 231 App. Div. (N. Y.) 386, 247 N. Y. Supp. 741.

The thread or center of a channel, as the term is above employed, must be the line which would give to the owners on either side access to the water, whatever its stage might be, and particularly at its lowest flow. *Horton v. Niagara, Lockport & Ontario Power Co., supra.*

So, too, where the mainland and an island have been separately surveyed, and purchased by different parties as distinct tracts, the grantees of the mainland cannot claim the island, or accretions thereto, as included in their grant. *Wiggenhorn v. Kountz, supra.*

And, "The right of title and possession of land formed by accretion follows the ownership of the riparian lands to which it is attached." *Independent Stock Farm v. Stevens,* 128 Neb. 619, 259 N. W. 647.

The right to "accretions" is certainly to be deemed identical as between the owner of a surveyed island and the owner of a mainland tract opposite to the same and possessing the identical water boundary. True, the owner of land entirely surrounded by a water boundary may receive accretions from any direction, but the principles which determine their ownership to the tract in dispute are identical. The principles announced by the supreme court of the United States in *Nebraska v. Iowa, supra,* and the rule promulgated in *Wiggenhorn v. Kountz, supra,* alike award the legal title to the accretions here in dispute to defendant Adelson as an incident to his possession as owner of the title to island No. 1, derived from the government.

This result is in strict harmony with conclusions of this court announced in *Briard v. Hashberger,* 107 Neb. 199, 185 N. W. 430, in the following language: "Title by prescription may be acquired to an island in a stream, which otherwise would belong to a riparian owner. Accretions to an island so held and occupied for more than the statutory period belong to the owner of the island, and not to the riparian owner to whom the island or a part of it would otherwise belong." See, also, *Independent Stock Farm v. Stevens, supra.*

It is obvious that a title by a government patent is at

least equal in dignity to one resting exclusively on adverse possession, and the case last cited sustains the proposition that legal title to a surveyed and patented island carries with it, as an incident thereto, legal title to accretions thereto.

In so holding we are quite in harmony with judicial opinion as elsewhere expressed.

In *Fillmore v. Jennings,* 21 Pac. 536 (78 Cal. 634) it appears: "Below plaintiff's land, which borders on a river, there is an island, which by accretions has been extended up the river opposite plaintiff's land, so that with the accretion to the latter a narrow channel only separates them, and plaintiff's land is separated from the main channel by the narrow one and the island. * * * *Held,* that plaintiff is not entitled to extend his boundaries across the narrow channel and the accretion to the island to the main channel, but that the owner of the island is entitled to the accretion to it." See, also, *Griffin v. Johnson,* 161 Ill. 377, 44 N. E. 206; *Naylor v. Cox,* 114 Mo. 232, 21 S. W. 589.

We have not overlooked the claims of plaintiff that at one time a small island owned by plaintiff existed in the Platte river, situated about half a mile east of island No. 1; and that in the development of the accretions to the latter the intervening channel was closed and this small island became included in, and as a part of, island No. 1. Due consideration has also been given to plaintiff's claim of adverse possession to the disputed land. Not only does the evidence in the record in support of plaintiff's claim lack in definiteness and probative value, but the evidence in this case, considered as an entirety, fairly establishes such acts and conduct on part of defendant Adelson as constitute actual, continued, notorious, and adverse possession of the lands in suit, as owner for more than ten years prior to the commencement of this action, and renders further consideration of plaintiff's adverse claims thereto unnecessary. *Twohig v. Leamer,* 48 Neb. 247, 67 N. W. 152; *Lantry v. Parker,* 37 Neb. 353, 55 N. W. 962; *Stryker v. Meagher,* 76 Neb. 616, 107 N. W. 792.

The sole remaining question for determination by this court, trying this case *de novo* and without reference to the determination of the matter as made by the district court, is as to the application for assessment of damages upon the dissolution of the temporary restraining order, made to and in the district court as a court of equity in the proceeding in which this restraining order was set aside, as a part of the final judgment entered therein. This appears to have been done in the instant case. No statute of Nebraska is cited in the briefs of counsel as supporting this procedure, and we are unable to find any legislation to that effect.

On this subject, a well-known text-writer declares the law to be as follows: "There has been much conflict of authority whether, in the absence of express legislation, a court of general equity powers might, upon dissolving an injunction, ascertain by reference, or otherwise, the amount of damages sustained by the injunction and decree payment of such amount without a new suit for that purpose. But, while courts of much respectability have insisted upon the exercise of such a jurisdiction, treating it as a cumulative remedy, entirely independent of and distinct from any action which might be brought upon the bond, the undoubted weight both of authority and principle is against the exercise of such a jurisdiction. It is certain that no warrant can be found for its exercise in the former practice of the English High Court of Chancery, and however desirable and convenient such procedure may be and undoubtedly is in practice, the doctrine is too firmly fixed to admit of controversy, that in the absence of positive legislation a court of equity has no power to afford a remedy upon the bond in the injunction suit, such a power being neither an incident to the general powers of courts of equity, nor consistent with the principles of equity jurisdiction. In the absence, therefore, of legislative authority to the contrary, a court of equity will not, upon dissolving an injunction, enforce payment of damages in the original cause, but will remit the parties aggrieved to their action upon the bond." 2 High, Injunctions (4th ed.) pp. 1605-1606, and cases cited in support thereof in the footnotes.

So also, this rule is announced in Corpus Juris: "The majority of decisions hold that, in the absence of express statutory authority or of some provision in the bond itself authorizing it, the court granting the injunction has no power on dissolution thereof to assess the damages resulting from the wrongful issuance of the injunction; even in jurisdictions where the power of the court to assess damages independently of statute or rule of court is recognized, this power is conditioned upon the fact that no injunction bond has been given." 32 C. J. 439.

Standard Encyclopedia of Procedure announces the applicable rule in these terms: "Except in the federal courts, in the absence of any statute authorizing the court to assess damages in the injunction suit, upon the dissolution of the injunction, the court has no authority to do so; the party aggrieved must resort to an independent action upon the bond." 13 Standard Ency. of Procedure, 315.

In this connection see also the following cases: *Higgins v. Allen,* 6 How. Pr. (N. Y.) 30; *Garcie v. Sheldon,* 3 Barb. (N. Y.) 232; *Bogacki v. Welch,* 94 Ala. 429, 10 So. 330; *Stanley v. Bonham,* 52 Ark. 354, 12 S. W. 706; *Greer v. Stewart,* 48 Ark. 21, 2 S. W. 251; *Sartor v. Strassheim,* 8 Colo. 185, 6 Pac. 215; *Chicago, R. I. & P. R. Co. v. Dey,* 76 Ia. 278, 41 N. W. 17; *Eastern Kentucky R. Co. v. Brown,* 99 Ky. 540, 36 S. W. 555; *Rankin v. Estes,* 13 Bush (Ky.) 428; *Dougal v. Eby,* 11 Idaho, 789, 85 Pac. 102; *American Bonding Co. v. State,* 120 Md. 305, 87 Atl. 922; *People v. Hawley,* 207 Cal. 395, 279 Pac. 136.

In view of the situation presented by the present record, this court finds it necessary to refuse to entertain jurisdiction of the question of assessment of damages now presented.

It follows that the decree appealed from is in all respects affirmed, save and except as to the determination of damages as therein made. That portion of the decree determining defendant's damages in the sum of fifty dollars is reversed, and the application for the assessment of damages as made by defendant is dismissed, without prejudice,

however, to his independent suit upon the bond given and approved in this proceeding.

AFFIRMED IN PART AND REVERSED IN PART.