BONNIE C. HEIDER ET AL., APPELLEES, v. WILLIAM H. KAUTZ ET AL., APPELLANTS.

87 N. W. 2d 226

Filed December 20, 1957. No. 34261.

650

*Donald V. Lowe* and *Baskins & Baskins,* for appellants.

*Edward E. Carr* and *Robert E. Roeder,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiffs, Bonnie C. Heider and Charles F. Heider, wife and husband, brought this action in equity against defendants, William H. Kautz and Vivian Thelma Kautz, husband and wife, to determine title to certain alleged accretive land claimed by plaintiffs, which land is attached to and a part of Lot 3 owned by plaintiffs at the east end of Ware Island in the North Platte River. Plaintiffs sought a decree adjudging them to be the owners of the land, together with injunctive relief against trespass thereon by defendants, and an award of damages for removal of a fence placed on the land by plaintiffs. In their answer, defendants denied generally and claimed title to the land by adverse possession and by accretion to Lots 4 and 5 owned by them. They sought a decree adjudging them to be the owners of the accretive land, together with injunctive relief against trespass by plaintiffs. For reply, plaintiffs denied generally and alleged that they had been in open, notorious pos-

session, claiming title to the land involved since 1942.

Upon trial to the court, a decree was rendered, finding and adjudging the issues generally in favor of plaintiffs, enjoining defendants from trespass on the land, and awarding plaintiffs $100 as damages. Thereafter, defendants' motion for new trial was overruled, and they appealed, assigning in substance that: (1) The trial court erred in the admission of certain evidence; and (2) the judgment was not sustained by the evidence but was contrary thereto and contrary to law. We do not sustain the assignments.

Being a suit in equity, it is the duty of this court to try the issues de novo, in conformity with rules reaffirmed in Uptegrove v. Elsasser, 161 Neb. 527, 74 N. W. 2d 61.

In regard to defendants' first contention, we are mindful of the controlling rule that: "In a case tried to the court in equity the presumption obtains that the trial court, in arriving at decision, considered such evidence only as was competent and relevant, and this court will not reverse a case so tried because other evidence was admitted, if there is sufficient competent and relevant evidence in the record to sustain the judgment." Rohn v. Kelley, 156 Neb. 463, 56 N. W. 2d 711. In the light thereof and the record before us, we conclude that defendants' first assignment has no merit. To discuss it further would serve no useful purpose.

Defendants admitted in their brief that there was no evidence in this record that would either establish adverse possession by plaintiffs or defendants in the land. On the other hand, as stated by plaintiffs in their brief: "* * * the plaintiffs did not make a claim to this land by adverse possession" but "they did claim title to it" by accretion. In the light of such admissions, the issue of adverse possession requires no further discussion. The primary question here is whether the land involved was accretive land belonging to plaintiffs or to defendants.

We conclude that it was accretive land belonging to plaintiffs.

In that connection, defendants offered the complete record and the opinion of this court in State v. Ecklund, 147 Neb. 508, 23 N. W. 2d 782. They relied thereon, contending that such authority determined the case at bar. A mere reading of the opinion in that case discloses that it is factually distinguishable and not controlling. That case simply involved a controversy between two riparian landowners on opposite banks of the North Platte River and presented the question of who owned relicted rights to land in the old river bed. Ware Island was not directly involved. The holding therein simply was that the facts fell within an exception to the general rule as between such riparian owners, and that the property line remained where it originally was before the main channel shifted over, hence the land in dispute belonged to defendants. As a matter of fact, the opinion cited and quoted with approval, then distinguished Higgins v. Adelson, 131 Neb. 820, 270 N. W. 502, which, together with other comparable authorities as hereinafter observed, is controlling in the case at bar.

Defendants also relied upon the opinion in Haney v. Hewitt, 105 Neb. 746, 181 N. W. 861, which is entirely distinguishable. Plaintiffs therein claimed unplatted Haney Island in the Platte River, which had become a part of Hewitt Island owned by plaintiffs. Haney Island was a separate body located between the thread of the main channel and platted lots owned by plaintiffs, thus the court concluded that it belonged to plaintiffs as riparian proprietors before it ever became a part of Hewitt Island, and that plaintiffs owned it subsequently because they owned the unplatted land in the river south of the thread of the main channel of the river. No such situation is presented here.

Herein we have the following situation: It is admitted or without dispute that plaintiff, Bonnie C. Heider, was the owner of deeded Lots 1, 2, and 3 in Sec-

tion 7, Township 14 North, Range 32 West of the 6th P. M., in Lincoln County, and that such land was a part of an island in the North Platte River, a nonnavigable stream, which island had been separately surveyed and platted by the United States, and was known as Ware Island. It was admitted that defendants were owners of deeded Lots 4 and 5 in Section 7, Township 14 North, Range 32 West of the 6th P. M., in Lincoln County, which land is located just south of the North Platte River and joins the south bank thereof, with a river channel beween the land owned by defendants south of the river, and that owned by plaintiffs, on Ware Island, north of the river. It was established that Ware Island was completely surrounded by the river, with a channel on the north as well as the south. Whether or not the south channel was as large as the north channel is of no importance here.

The record discloses that Ware Island was originally surveyed and platted by the United States in 1870 and that it then consisted of Lot 1 in Section 11, Lots 1, 2, 3, and 4 in Section 12, and Lots 1, 2, and 3 in Section 7, all in Lincoln County. Lot 3 in Section 7 comprised the east end of Ware Island, the easterly point of which did not extend to the east line of Section 7 when the island was originally so surveyed and platted. However, since 1870 the river has slowly deposited land upon the east end of said Lot 3 in the form of gradual accretions which have extended the island farther east in a course roughly parallel with the north bank of the south channel of the river to the east line of Section 7 beyond the land owned by defendants. Defendants' land lies directly south of Lot 3 and the land in question. It lies south of the south channel of the river. In that connection, other facts require no recitation.

As recently as Ziemba v. Ziemba, *ante* p. 419, 86 N. W. 2d 190, we reaffirmed that: "Accretion is the process of gradual and imperceptible addition of solid material, called alluvion, thus extending the shore line out by

deposits made by contiguous water, or by reliction, the gradual withdrawal of the water from the land by the lowering of its surface level from any cause.

"Where, by the process of accretion and reliction, the water of a river gradually recedes, changing the channel of the stream and leaving the land dry that was theretofore covered by water, such land belongs to the riparian owner.

"The fact that accretion is due, in whole or in part, to obstructions placed in the river by third parties does not prevent the riparian owner from acquiring title thereto.

"Where the thread of the main channel of a river is the boundary line between two estates and it changes by the slow and natural processes of accretion and reliction, the boundary follows the channel." Those are fundamental rules which have application here, with the distinction that herein we are dealing with accretions of land to an island.

The applicable rules in such a comparable situation were stated and applied in Higgins v. Adelson, *supra,* wherein this court held: "Where title to an island in a nonnavigable stream is conveyed to a grantee by government patent, and the land so conveyed is bounded by the waters of such stream, the grantee's ownership carries with it the bed of the river to the center or thread of each surrounding channel.

"The thread or center of a channel, as the term is above employed, must be the line which would give the owners on either side access to the water, whatever its stage might be, and particularly at its lowest flow.

"The right of title and possession of land formed by accretion follows the ownership of the riparian lands to which it is attached."

In that opinion, this court said: "And, 'The right of title and possession of land formed by accretion follows the ownership of the riparian lands to which it is attached.' Independent Stock Farm v. Stevens, 128 Neb.

619, 259 N. W. 647." This court, citing authorities, then said: "The right to 'accretions' is certainly to be deemed identical as between the owner of a surveyed island and the owner of a mainland tract opposite to the same and possessing the identical water boundary. True, the owner of land entirely surrounded by a water boundary may receive accretions from any direction, but the principles which determine their ownership to the tract in dispute are identical." See, also, Hardt v. Orr, 142 Neb. 460, 6 N. W. 2d 589.

In Roll v. Martin, 164 Neb. 133, 82 N. W. 2d 34, citing Higgins v. Adelson, *supra,* and other authorities, we said: "Appellants contend, since they were and are the owners of land on Frazer's Island and the area involved was the bed of the river, that they are entitled to all accretions to their land on the island to the thread of the closed channel as a matter of right; that they were not required to take possession thereof; and that failure to do so did not forfeit such right unless someone actually had established the right thereto by adverse possession. With these principles we find no fault and they are supported by the authorities cited."

Also, as said in In re Application of Central Nebraska Public Power & Irr. Dist., 138 Neb. 742, 295 N. W. 386: "An owner of land on the shore of an unnavigable river, in the absences of restrictions in his grant, owns to the center line of the stream. Haney v. Hewitt, 105 Neb. 746, 181 N. W. 861; McBride v. Whitaker, 65 Neb. 137, 90 N. W. 966; Wiggenhorn v. Kountz, 23 Neb. 690, 37 N. W. 603. * * *

"Where title to an island, bounded by the waters of a nonnavigable stream is in one owner, and title to the land on the shores opposite the island is in other owners, the same riparian rights appertain to the island as to the mainland. Higgins v. Adelson, 131 Neb. 820, 270 N. W. 502."

Further, as said in Wiggenhorn v. Kountz, 23 Neb. 690, 37 N. W. 603, 83 Am. S. R. 150: "In the case under

consideration, it is clearly shown that there is a well-defined channel of the river on each side, between the main-land and the island. The grant of main-land, therefore, would, at the most, merely extend to the center thread of the stream between the shore and the island, so that in no event could an owner of the main-land claim an interest in the island."

In the light of evidence heretofore recited, the foregoing rules and statements are applicable and controlling in the case at bar. They conclusively support the judgment of the trial court which found and adjudged that plaintiffs owned the land involved and enjoined defendants from trespass thereon.

There remains then the question of damages awarded plaintiff in the sum of $100 which defendants argued was not established by competent evidence. We do not agree. There is competent evidence that plaintiff, Charles F. Heider, constructed the fence involved in 1951, and defendant, William H. Kautz, admittedly removed the fence, which was about 600 feet long, by taking out 11 creosote posts and 2 strands of wire. The fence extended along the north bank of the south channel from a north and south fence which was at the east side of the surveyed part of the island to the east section line of Section 7. Plaintiff, Charles F. Heider, testified that he bought and paid for the material and labor and had the fence constructed. He was the owner thereof, as heretofore observed, and he estimated that the reasonable value of the material and labor required to put the fence back as it was when taken out by defendant, William H. Kautz, would be $60 to $75 for material and $25 to $35 for labor; that the cost to so restore the fence would be $100. There is no evidence to the contrary.

As recently as Sorensen Constr. Co. v. Broyhill, *ante* p. 397, 85 N. W. 2d 898, we held: "There being no specific standard by which reasonable value of labor and materials furnished shall be proved, prima facie proof thereof is made where a reasonable inference of

such value flows from the evidence adduced." Defendants' contention has no merit.

For reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is affirmed. All costs are taxed to defendants.

AFFIRMED.